## Pfoutz *versus* Comford.

A debtor does not become a non-resident, so as to subject him to a foreign attachment, by leaving his place of abode in this state, and going to another state to seek a new residence.

He continues a resident of the state, until he has obtained another place of abode, with the intention of remaining in it.

ERROR to the Common Pleas of *Clearfield county*.

This was a foreign attachment by Edward Comford against James M. Pfoutz, for $159.20, in which J. B. McEnally, an execution-creditor of the defendant, was permitted to interplead and take defence; and an issue was awarded to try: 1. Whether any debt, and how much, was due from Pfoutz to the plaintiff, when this suit was brought? 2. Whether, at the time of commencing the suit, Pfoutz was liable to be sued by foreign attachment?

James M. Pfoutz, the defendant, had been for several years a resident of Clearfield county; for about two years before this suit was brought, he had resided with his family, at Ansonville, where he kept a store. In the spring, or early part of the summer of 1856, he failed; and executions were issued against him, and levied upon his personal property. He claimed certain goods, not amounting to $300, under the exemption law, which were appraised and set apart to him by the sheriff.

On the 16th June 1856, he started on a trip to the West, to seek a situation that would suit him as a place of business and residence. Before starting, he packed up his goods in boxes, with the exception of his furniture, and left them in his dwelling-house; he left the key in charge of a neighbour, telling him that it was his intention to take his family to his mother-in-law, in Chambersburg, and leave them there, while he went to the West to look for a situation; that he would return in five or six weeks, and remain at Ansonville until fall, and then he would go West.

This writ of attachment was issued on the 19th June 1856; and on the 8th July, the sheriff sold the goods left by the defendant in his dwelling-house, under executions against him. Pfoutz returned about the beginning of August, and finding that all his household furniture had been sold by the sheriff, after remaining for a few days at Ansonville, he left with his family for another state.

Under this state of facts, the court below (BURNSIDE, P. J.), in answer to points presented by McEnally, instructed the jury, that if the intention to remove existed, and Pfoutz left in June, with that intention, they should find for the plaintiff.

[Pfoutz v. Comford.]

To this instruction, McEnally, intervening on behalf of the defendant, excepted; and a verdict and judgment having been rendered for the plaintiff for $174.25, this writ was sued out on behalf of the defendant, and the said charge was here assigned for error.

*J. B. McEnally*, for the plaintiff in error.—Non-residents of the state, and no others, are liable to foreign attachment. What acts are required to make a citizen of the state a non-resident? And was Pfoutz a non-resident on the 19th of June 1856? The Act of 1836 does not create any new definition of what is to be understood by residence and non-residence. It adopts words or language as they have already been defined. We may, therefore, look for authority to the decisions, made either before or since 1836, defining what acts are requisite to make a citizen a non-resident.

The charge of the court was uncertain in its meaning, calculated to mislead the jury, and not warranted by the evidence. When Pfoutz left Ansonville in June, doubtless, the intention to remove existed, and he left with that intention, but it was an intention to remove at a future time, viz., after he had found a situation, and returned to Ansonville, and lived there with his family till fall. He did not intend to make that journey a permanent removal; and there is no evidence to sustain such an assertion. If mere intention were sufficient, it must be the intention of immediately making a permanent removal, by the journey the person is then taking. Going to hunt a location with the intention of returning and making a permanent removal at a future time, is not enough.

But the law, as it has been held in Pennsylvania to the present time, requires more than this. It requires two things, viz.: 1. An actual removal; 2. An intention of permanently remaining and residing elsewhere than in the state. And the intention and the removal must both be fully carried out and executed, before a citizen of Pennsylvania becomes a non-resident, and liable to the process of foreign attachment: Lyle v. Foreman, 1 *Dall.* 480; Casey's Case, 1 *Ash.* 126; Lazarus Barnet's Case, 1 *Dall.* 152; Fuller v. Bryan, 8 *Harris* 144.

*W. A. Wallace*, for the defendant in error.—The uniform construction of the Act of 1705, was, that it was only applicable to persons not *inhabitants* of the state; that is, persons who *never resided* here, or whose actual residence was in another country, and not to those who resided here, or who had absconded or otherwise removed: *Sergeant on For. Att.* 63; Lazarus Barnet's Case, 1 *Dall.* 153; Kennedy v. Baillie, 3 *Yeates* 55; Lyle v. Foreman, 1 *Dall.* 480; Casey's Case, 1 *Ash.* 126.

These cases were all decided under the acts in existence pre-

[Pfoutz *v.* Comford.]

vious to the passage of the Act of 1836, and the test was, *is the debtor within the Commonwealth?* But the Act of 13th June 1836, § 44, effected a change, and made liable to foreign attachment any person *not within the county where the writ issued, although he may be in the state, provided he is to be deemed not an inhabitant of, or resident in, the state : Sergeant on For. Att.* 69.

The question, then, is one of residence, as contradistinguished from the test of inhabitancy under the old law : Thompson's Case, 1 *Wend.* 43 ; Isham *v.* Gibbons, 1 *Bradford* 70–84 ; Burnham *v.* Rangeley, 1 *Woodbury & Minot* 8–12 ; Yelverton *v.* Burton, 2 *Casey* 351 ; Fuller *v.* Bryan, 8 *Harris* 144 ; 1 *Seld.* 423. Residence is a question made up of fact and intention : Malone *v.* Lindley, 1 *Phila. R.* 192 ; Reed *v.* Ketch, *Id.* 105.

The opinion of the court was delivered by

LOWRIE, C. J.—This is a feigned issue, to try whether the defendant was "liable to a foreign attachment," which is an issue in law and not in fact. The parties meant to try whether he was non-resident and absent, and we take it so. It is worth while doing such things right ; for careful practice requires and begets accuracy of thought.

An execution-creditor was allowed to intervene and raise the question. The defendant had been residing some years in Clearfield county. In June 1856, he packed up his goods, and left them in the care of a friend ; and on the 15th June, started with his family, to leave them in the care of his father or his mother-in-law, in another part of the state, while he should go West to look for a new residence, intending to be back in four or five weeks. On the 19th, the attachment issued, and was served on the 20th, on goods already in the sheriff's hands on a prior execution. He did return with his family in four or five weeks, remained a short time, and then removed to some western state. On this evidence that court charged, that he was non-resident and absent, "if he left in June with the intention to remove to the West." The meaning of this is, that if a resident leave his place of abode, and go into another state to seek another residence, he thereby becomes a non-resident. This is erroneous. Residence is, indeed, made up of fact and intention ; that is, of abode with intention of remaining. But it is not broken by going to seek another abode ; but continues till the fact and intention unite in another abode elsewhere. He remained a resident of this state until he left the state with his family on his way to a new home elsewhere : see *Westlake's Private International Law* 36, 37.

Judgment reversed, and a new trial awarded.