## Commonwealth ex rel. Walker v. Hoke et al.

*Election law—Residence of voter—Domicil—Change of residence—Residence in prison—Intention—Constitution.*

1. Where a man and his wife accept the positions respectively of deputy warden of the county jail and matron of the detention house therein, give up their home in one district, where they have always voted, and with their effects move into the prison in another district as their residence, the wife cannot be registered as a voter in the district of their former home; and this is the case, although she asserts that they have no intention to abandon that district as their home, and that it is their intention to return to it when their employment in the prison comes to an end.

2. Section 13, article viii of the Constitution does not apply to persons in the employ of a city, county or borough.

3. The primary significance of the word "residence," as used in the Constitution, is the same as domicil—a word which means the place where a man establishes his abode, makes the seat of his property and exercises his civil and political rights.

4. Two things must concur to constitute domicil: First, residence; and, secondly, the intention of making it the home of the party. There must be the fact and the intent.

5. If a voter has a fixed and permanent home in one election district, he cannot, because dwelling temporarily in another in the prosecution of his business, vote in the latter.

Rule to show cause why the relator should not be registered as a qualified voter. C. P. Schuylkill Co., Nov. T., 1922, No. 227.

*R. A. Freiler,* for plaintiff; *R. M. Bashore,* for defendants.

Koch, J., Oct. 5, 1922.—The rule was granted on Monday, Oct. 2, 1922, upon the petition of Carrie Walker, and made returnable the next morning at 10 o'clock. The petitioner waived the filing of an answer by the respondents and testimony was taken at the time fixed for the hearing.

Carrie Walker is the wife of Robert M. Walker, to whom she has been married for twenty-one years. Prior to April 1, 1919, they resided for a period of seven years, under a lease, at No. 521 West Norwegian Street, Pottsville, Pa., and were qualified voters in the 2nd precinct of the 3rd Ward of said city. In fact, Mr. Walker was born in that ward over forty-nine years ago, and always resided somewhere in it until April 1, 1919, when his duties as Deputy Warden of the Schuylkill County Jail required him to move into a house belonging to the county on the jail premises in the 5th Ward of Pottsville, whither he and his wife then moved and have lived continuously ever since. Since April 1, 1919, Mrs. Walker has been matron of the detention house for juveniles awaiting hearing of their cases in court, and the home of Mrs. and Mr. Walker is used also for the purposes of a detention house. Mrs. Walker's constant presence is necessary there for the performance of her official duties. Likewise, her husband's duties require his presence at the prison at all times. Both have continued to vote in the 3rd Ward ever since women have had the right to vote, notwithstanding their residence in the 5th Ward. Neither of them has ever had or expressed any intention to change his or her residence from the 3rd to the 5th Ward, and both have been always registered and assessed in the 3rd Ward prior to the registry now being made. Both of them testified that their present residence is only temporary, and whilst they remain in their present positions as deputy warden of the prison and matron of the detention house, and that, upon the termination of their services in those offices, they intend to again take up their residence somewhere in the 2nd precinct of the 3rd Ward of Pottsville. The petitioner has paid State and county taxes for the past two years.

2 D. & C.

Commonwealth ex rel. Walker *v.* Hoke et al.

On Sept. 19, 1922, she appeared before the respondents at the place for registering voters in the 2nd precinct of the 3rd Ward of Pottsville and demanded that her name be registered as a duly qualified voter in the said district, in order that she might be qualified to vote at the general election to be held in November next. The respondents refused to register her as a voter, and the purpose of this rule is to oblige them, by writ of peremptory mandamus, to register her name as a resident of said ward. Said house, No. 521 West Norwegian Street, belongs to the estate of Purcell, and is at present occupied by Francis Reilly, as lessee. Hitherto, Mr. Walker has been registered and has voted regularly in said precinct, and was last year elected the member of the Republican Committee from said precinct. Both Mr. and Mrs. Walker claim that they have not abandoned or lost their residence in the 3rd Ward by moving from it into the 5th Ward. When they moved from the 3rd Ward, they took all their effects with them. They intend to purchase No. 521 West Norwegian Street, if they can buy it, and, in such event, will move into it when their official relations with the county cease. They have always paid their taxes in the 3rd Ward, and were assessed and registered there and they have never voted in the 5th Ward. If they cannot buy No. 521 West Norwegian Street, they intend to occupy some other residence in the 3rd Ward after their present duties cease. Mrs. Walker testified: "I have not any place that I call my home. The home I am living in now is not my home." Although she claims a legal residence in the 2nd precinct of the 3rd Ward, she is not able to state where that residence is. Ever since leaving No. 521 West Norwegian Street she and her husband have registered that as their residence. In order to register, they were obliged to state whether they were owners or lessees of the premises, and each registered as lessee. In order to get their present positions, Mr. and Mrs. Walker were obliged to move where they now live, but they have never been registered or assessed, and never voted, in that ward.

The petitioner seems to intend to remain in the 5th Ward indefinitely and has no present intention to leave it. For the time being, she has her home where she now lives, and will continue to have it there as long as she holds her present position.

Residence in an election district is a primary essential to vote therein: Section 1, art. VIII, Constitution. The 13th section of art. VIII of the Constitution says: "For the purpose of voting, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States, nor while engaged in the navigation of the waters of the State or of the United States, or on the high seas, nor while a student at any institution of learning, nor while kept in any poorhouse or other asylum at public expense, nor while confined to prison." This section does not refer to persons in the employ of a county, city or borough. Therefore, persons who are so employed are excluded by its provisions, and the inference can be drawn therefrom that such employees may lose their residence in the districts from which they move and gain a residence in the districts where they move on account of their employment.

In Chase *v.* Miller, 41 Pa. 403, 420, Mr. Justice Woodward, speaking for the court, said: "Undoubtedly the primary signification of the word 'residence,' as used in the Constitution, is the same as domicil—a word which means the place where a man establishes his abode, makes the seat of his property and exercises his civil and political rights."

Chief Justice Shaw said in Abington *v.* North Bridgewater, 23 Pick. 170,

177: "That every person must have a domicil somewhere, and that a man can only have one domicil for one purpose at one and the same time." In order to prove domicil, he said (page 178): "It depends, not upon proving particular facts, but whether all the facts and circumstances, taken together, tending to show that a man has his home or domicil at one place, overbalance all the like proofs tending to establish it at another. Such an inquiry, therefore, involves a comparison of proof, and, in making that comparison, there are some facts which the law deems decisive unless controlled and counteracted by others still more stringent. The place of a man's dwelling-house is first regarded in contradistinction of any place of business, trade or occupation. If he has more than one dwelling-house, that in which he sleeps or passes his nights, if it can be distinguished, will govern. And we think it settled by authority that if the dwelling-house is partly in one place and partly in another, the occupant must be deemed to dwell in that town in which he habitually sleeps, if it can be ascertained." Intention controls the question of residence to a large extent. "Undoubtedly, residence is a question of intention. In cases involving it, the inquiry is, *quo animo,* the party either moved to or from the State. And upon the solution of this question depends the fact whether the petitioner has gained or lost a residence. But, before this question can arise, an actual removal must have taken place. The mere intention to remove, not consummated, can neither forfeit the old domicil nor enable him to acquire a new one. Removal out of the State without an intention permanently to reside elsewhere will not lose residence, nor will a mere intention to remove permanently, not followed by actual removal, acquire it:" Case of James Casey, 1 Ashmead, 126. "It is equally clear that electors of the State are those who have their homes within the State and not elsewhere. Their domicil is there, and their home is the place where they permanently reside, and to which they intend to return when away from it. . . . Therefore, when the Constitution declares that the elector must be a resident of the State for one year, it refers beyond question to the State as his home or domicil and not as the place of a temporary sojourn. This being the character of the State residence, it defines . . . the district residence. . . . The elector must, therefore, vote at home, not only in the State, but in the district where his home is. His domicil must be there. . . . If he has a fixed and permanent home in one district, he cannot, because dwelling temporarily in another in the prosecution of his business, vote in the latter. The purpose of the district residence . . . is not only to identify the elector, but to prevent frauds in elections. But if, because he is engaged in some business there, he may vote in the district where he is so employed for ten days, what is to prevent his voting at home and in his proper district? In these days of swift traveling, one voting in the morning, one hundred miles away from home, where he is temporarily sojourning, might vote again at home before night. He has not lost his domicil, where his family and chief business are, by his temporary sojourn on some special employment. . . . 'Residence,' in the Constitution, means home, fixed abode, domicil of the elector as distinguished from a place of temporary sojourning:" Fry's Election Case, 71 Pa. 302. "By the term 'domicil,' in its ordinary acceptation, is meant the place where a person lives or has his home. In a strict legal sense that is properly the domicil of a persons where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Two things must concur to constitute domicil: First, residence; and, secondly, the intention of making it the home of the party.' There must be the fact and the intent:" Story on Conflict of Laws, §§ 41 and 44. Mr.

2 D. & C.

Commonwealth ex rel. Walker *v.* Hoke et al.

Chief Justice Lowrie said in Pfoutz *v.* Comford, 36 Pa. 420: "Residence is, indeed, *made up of fact and intention;* that is, of abode with intention of remaining. But it is not broken by going to seek another abode, but continues till the fact and intention unite in another abode elsewhere. The apparent and avowed intention of *constant* residence, not the manner of it, constitutes the domicil. It may be defined to be a residence at a particular place, accompanied with positive or presumptive proof of continuing it for an unlimited time. It (residence) means that place where the elector makes his permanent or true home, his principal place of business and his family residence, if he have one; where he intends to remain indefinitely and without a present intention to depart; when he leaves it, he intends to return to it, and after his return he deems himself at home:" Fry's Election Case, 71 Pa. 302.

"A man resides where, in ordinary language, his home is:" Com. *v.* Devine, 14 Dist. R. 1.

From the undisputed facts and the principles of law applicable thereto, we must conclude that when Mr. and Mrs. Walker gave up their place of abode in the 3rd Ward and moved all their property into the 5th Ward and took up there abode there, they made the latter abode their home and became residents there, and can, therefore, exercise their right of suffrage only in that ward. Their intention to ultimately move back into the 3rd Ward, without an actual moving, does not fix their residence in that ward. They reside where they now eat and sleep and live and earn their livelihood, and where they have all their property, and, therefore, they must be denied the privilege of registering and voting in the 3rd Ward, from whence they moved over three and a-half years ago.

And now, Oct. 5, 1922, the rule is discharged, at the costs of the petitioner.

From M. M. Burke, Shenandoah, Pa.