## Tremont v. Tremont.

*Henry I. Fox*, for libellant.

WILLIAMS, P. J., Nov. 22, 1928.—In the supplemental report of the master he concludes as a matter of law that, "inasmuch as the libellant was not a resident of the State of Pennsylvania for one year immediately preceding the filing of the libel in this case, this court has no jurisdiction in this suit in divorce," whereupon he recommends that "the libel be dismissed for lack of jurisdiction."

The legal conclusion of the master may not be warranted by the facts. The complete evidence bearing on the residence of the libellant within this Commonwealth for a year before the presentation of her petition in divorce follows:

"In August of 1925 he fooled me, telling me that he was going to take me to Philadelphia, but he took me to Paterson, N. J., and when I reached there, I found him living with this Beatrice Volpe in the same house. He beat me and told me that woman had to be in the same house, that I must consent to do as she said. I told him that I could not stand it, and he said to do so or

get out. He wanted me to allow Beatrice Volpe to sleep in the same bed with him and myself. At that time I was with child. He compelled me to remain in the room while he was actually having intercourse with Beatrice Volpe. I tried to get away from the place, but I had no money or any means to get away. My husband told me I had to stay there and submit to his living in that condition, or else get out. Finally, he gave me some money, and as soon as I got it, I took my four children and came back to Norristown, where my folks lived. When I left Paterson he was still living with Beatrice Volpe. She was arrested a number of times in Norristown for larceny. She had her daughter working in Paterson. My husband was not working then. So far as I know, Beatrice Volpe is still with my husband.

"When we went to live on Sandy Street, we purchased a property there and paid down about $400 or $500. My husband induced me to sign the deed for this property, telling me that he needed the money and that he was going to do better, wherever we would go; that we were to go to Philadelphia. It was because I thought he was going away from Betrice Volpe that I signed the deed. When he took me away, and I thought he was taking me to Philadelphia, he took me to Paterson instead, and when I got there, I found this Beatrice Volpe already installed in the house.

"I was in Paterson, N. J., for five weeks, in fear and terror all the time, and would have gotten away from there at once if I had had the money or known how to get home. When my husband finally gave me the money, he told me to get out.

"I am Mary Tremont, the libellant in this proceeding. I was a resident of the Borough of Norristown and have been a resident of the Borough of Norristown nearly all my life. In August of 1925, I left the Borough of Norristown with my husband, Vincent Tremont. At the time we broke up our home in Norristown, I was going from Norristown with my husband, and had the intention of making a new home. I thought we were going to Philadelphia, as my husband said he was going there. We got on the train, and instead of going to Philadelphia he took me to Paterson, New Jersey. As I have originally testified, when I got to Paterson, New Jersey, I remained there for about five weeks. The only reason I remained there was because I could not get away. I had no money. I was willing to go with my husband if he had done what was right, and while I did not know that I was going to Paterson, I would have been willing to have gone there and resided with him, if he would support me and do what was right. I would have gone any place for my children's sake. I came back on Labor Day, September 7, 1925."

The Act of March 13, 1815, § 11, P. L. 150-154, says that "no person shall be entitled to a divorce . . . who is not a citizen of this State, and who shall not have resided therein at least one whole year previous to the filing of his or her petition or libel."

The general interpretation of the word "resided," as used in the above statute, is the having had a residence acquired with domiciliary intent.

"Residence is, indeed, made up of fact and intention; that is, of abode with intention of remaining:" Pfoutz v. Comford, 36 Pa. 420 (1860), Lowrie, C. J., page 422.

Fact and intention must concur: Reed's Appeal, 71 Pa. 378, (1872), Sharwood, J., page 383.

In the instant case, it is clear that, until midsummer of 1925, the libellant was a resident of Pennsylvania within the meaning of the foregoing act of assembly. The master raises, however, the question of her *bona fide* residence in this State on account of her sojourn in Paterson, New Jersey, for a period

of about five weeks in August and early September that year. If the libellant became domiciled permanently in New Jersey at any time during such sojourn, the master is correct in concluding this court is without jurisdiction. Unfortunately, he has found the libellant lost her Pennsylvania residence with domiciliary intent, and is, therefore, unable to meet the condition precedent to her divorce suit of residence here for one year prior to the exhibition of her libel.

The testimony shows that while the libellant and respondent were living in the Borough of Norristown, this county, the wife was treated in a brutal and revolting fashion by a husband infatuated with a certain female named Beatrice Volpe. At that time, the libellant and respondent resided on Sandy Street in a home standing in their joint names. The respondent was desirous of selling the family dwelling. By the simple ruse of telling the libellant that upon the sale of the real estate he would move to the nearby City of Philadelphia, this State, the husband induced the wife to sign the deed conveying away their home. Of course, this was easy for the respondent to accomplish, because the libellant wished to break up the relationship between her husband and Beatrice Volpe. So the wife consented to join in the conveyance but with the sole thought of moving to Philadelphia. When the libellant and respondent and their children removed from Norristown, so far as the libellant was concerned, she intended to continue to make her home in Pennsylvania. In other words, if, at this point, there was an intention on the part of the libellant to abandon her Norristown dwelling, such intention was for the single purpose of acquiring a Philadelphia domicile. Reed's Appeal, *supra*, holds that a domicile once acquired remains until actual acquisition of a new domicile. Therefore, when the libellant left Norristown intending to acquire a new domicile in Philadelphia, she retained her domicile in Norristown until such time as she took up abode elsewhere with intention of remaining in the new abode.

Instead, however, of escorting the members of his family to the "City of Brotherly Love," the respondent took them to Paterson, New Jersey. The intention of the respondent so to do was unknown to the libellant when she departed from Norristown. Upon arrival at Paterson, the husband and father installed his wife and family in a house already occupied by Beatrice Volpe. Thus the libellant found waiting for her in the new home the very woman the wife wanted her husband to forsake. Surely, it ought to be concluded with safety that once the jealous gaze of the libellant had fallen upon the form of her husband's mistress ensconced in the new dwelling, the wife formed no intention of making a permanent domicile beneath the roof covering the head of Beatrice Volpe. As already noted, under the authority last mentioned, the libellant continued to retain her Pennsylvania domicile until she took up a fresh abode with the intention of staying permanently in such abode.

From the moment the triumphant leer of Beatrice Volpe greeted the libellant on the threshold of the Paterson home, the latter wished to return immediately to Norristown, and only because of lack of funds was she unable to gratify her desire. It must be apparent that, under the circumstances, during the relatively short time the libellant remained in New Jersey, the essential elements of foreign domicile never attached to her. While her physical presence in Paterson is not to be disputed, it is equally clear she never meant to dwell there permanently under the existing conditions. Hence, her sojourn in New Jersey was, at most, but a temporary absence from the domicile of the libellant in Pennsylvania. There is a cloud of authority for

the proposition that mere temporary absence beyond the borders of the Commonwealth—when *bona fide* residence within the State remains unchanged—will not defeat the right to divorce.

It is true that, as a general rule, the domicile of the wife follows the domicile of the husband. On the facts of the present case, it may be conceded the respondent established his domicile in New Jersey, for he sold and removed from his home in Pennsylvania and established an abode in Paterson with intention of staying there indefinitely. The inquiry presented is, then, whether by operation of general rule the libellant acquired an extraterritorial domicile.

If the conduct of the husband entitled the wife to have their marriage dissolved, her right to establish a domicile apart and separate from that of her husband is well recognized: Reed *v.* Reed, 30 Pa. Superior Ct. 229, 236 (1906), Orlady, J. In the case at bar, only force of circumstances kept the libellant in Paterson. If the operation of the broad principle that the domicile of the wife follows that of her husband should draw the libellant within the folds of the jurisdiction of New Jersey, a gross injustice would be done her. By deceit alone did her husband persuade and induce her to accompany him to a foreign jurisdiction, in which, so soon as the real confronting situation had been revealed, she resolved immediately to leave and from which, so soon as reasonable opportunity had been afforded, she returned to her home in Norristown. The unity of person created by marriage is a legal fiction to be followed for all useful and just purposes, but not to be pursued in a proceeding by nature making husband and wife opposite parties to the extent of the destruction of the rights of the wife, contrary to the principles of natural justice: Colvin *v.* Reed, 55 Pa. 375, 379 (1867), Agnew, J.

The case of the libellant is most meritorious. The evidence proves beyond peradventure of doubt, cruel and barbarous treatment endangering her life and indignities to her person, rendering life burdensome and condition intolerable. This court has jurisdiction and the master could have so found. A formal decree of divorce will be entered separately.

From Aaron S. Swartz, Jr., Norristown, Pa.