# Hilliard *v.* Enders & Company.

196  587
199  605

196          587
19 SC ˢ270

*Foreign attachment— Corporation—Name—Evidence.*

Where a garnishee in a foreign attachment admits owing a certain sum but claims that the debt which he owes is due to a corporation other than that named as defendant, and produces evidence to show that all the bills were made out in the name of the other company and that he gave all checks in payment to and received all receipts from it, he may offer in evidence a certified copy of the proceedings of organization of that company, incorporated by another state, to show that there was such a company.

*Foreign attachment—Assignment for creditors—Record.*

In a foreign attachment where the defendant is a corporation of the state of Vermont, and the garnishee claims that the defendant had made an assignment for creditors prior to the attachment, the assignment may be proved by an exemplified copy of the deed of assignment, and of the other papers required by the law of Vermont to be executed and filed in the county clerk's office with the deed of assignment. Under the laws of Vermont copies of the assignment and the other papers are matters of record, and certified copies of them are therefore legal evidence.

*Foreign attachment—Assignment for creditors—Priority of date—Evidence—Question for jury.*

In a foreign attachment where the garnishee sets up a prior assignment for creditors, and the evidence tends to show that the writ of attachment was received by the sheriff at 12 : 57 p. m., and that the assignment was filed on the same day at 11:10 a. m., the question of priority is for the jury.

Where an assignment for creditors made in Vermont is marked of record as having been filed at a certain hour and minute on a day designated, and the bond is marked filed of the same day without giving the precise hour and minute, and the Vermont law requires the bond to be given and filed " at the time of making the assignment," the presumption that all things are properly done arises, and is a sufficient basis upon which to submit to the jury the question as to whether the bond was filed at the same time as the assignment.

*Foreign attachment—Foreign assignment—Recording.*

An assignment made for the benefit of creditors by a citizen of another state passes the title to personalty in this state fully for all purposes, and such personalty is to be distributed under the law of the domicile of the assignor.

A resident of a foreign state cannot by a foreign attachment in this state, obtain preference over an assignment for creditors of the estate of a citizen of another foreign state. The rule rests on comity between states, the only exceptions is in favor of our own citizens. Failure to record the assignment in this state as provided by the Act of May 3, 1855, P. L. 415,

will not give priority to such foreign attachment, as the act was passed for the protection of domestic creditors alone.

*Assignment for creditors—Recording foreign assignments—Act of May 3, 1855, P. L.* 415.

The act of May 3, 1855, construed as affording protection to domestic creditors alone, does not violate article 4, section 2, of the Constitution of the United States which provides that "citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

Argued March 27, 1900. Appeal, No. 60, Jan. T., 1900, by plaintiff from judgment of C. P. No. 4, Phila. Co., Sept. T., 1898, No. 28, on verdict for garnishee in case of Rufus E. Hilliard v. Frederick Enders, trading as Enders & Company. Before GREEN, C. J., McCOLLUM, MITCHELL, BROWN and MESTREZAT, JJ. Affirmed.

Issue between plaintiff and garnishee on answers to interrogatories in foreign attachment. Before ARNOLD, P. J.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* (1–4) rulings on evidence referred to in the opinion of the Supreme Court; (5–8) in submitting to the jury the question of the priority between the attachment and the assignment; (10) in not directing a verdict for the plaintiff.

*J. Fithian Tatem* and *James S. Williams* for appellant.—An exemplified record is never admissible in lieu of the original excepting in cases where a statute requires the instrument to be recorded or expressly makes the copy evidence: Wharton on Evidence, secs. 111, 115; Penrose v. Wolf, 33 Legal Intell. 298; Wendell v. Abbott, 43 N. H. 68; Wharton on Evidence, secs. 108, 117; State v. Wells, 11 Ohio Rep. 261.

Any conclusion of the jury as to the time when the bond was filed was mere conjecture; and in such a case it is the duty of the court to withhold the question from the jury: Howard Express Co. v. Wile, 64 Pa. 201; First Nat. Bank v. Wirebach, 106 Pa. 37; Sidney School Furnishing Co. v. Warsaw School District, 122 Pa. 494.

The act of 1855 as construed by the court is unconstitutional: Corfield v. Coryell, 4 Wash. C. C. 371; Slaughterhouse Cases, 16 Wall. 36; Cole v. Cunningham, 133 U. S. 107; Blake v.

McClung, 172 U. S. 239 ; Morgan v. Neville, 74 Pa. 53 ; Rothermel v. Meyerle, 136 Pa. 250 ; Clark v. Toby Valley Supply Co., 14 Pa. C. C. 344 ; Cofrode v. Gartner, 79 Mich. 332 ; Paine v. Lester, 44 Conn. 196 ; Ward v. Morrison, 25 Vt. 593 ; Ward v. McKenzie, 33 Texas, 297.

*John Weaver* and *John G. Johnson*, for appellee.—Secondary evidence is admissible to establish the execution of a paper where the subscribing witness is out of the jurisdiction of the court : Burton v. Driggs, 20 Wallace, 125 ; Hayward Rubber Co. v. Duncklee, 30 Vt. 29 ; Woods v. Burke, 67 Mich. 674 ; Mitchell v. Jacobs, 17 Ill. 235.

In Pennsylvania it has been held that the giving of the bond is not a condition precedent, and a sale by the assignee without giving it is good : Dallam v. Fitler, 6 W. & S. 323 ; Heckman v. Messinger, 49 Pa. 465.

The learned trial judge left to the jury to determine as a matter of fact, whether the assignment was recorded in Vermont before or after the issuance of the foreign attachment. He charged as a matter of law, that if it was so recorded, the garnishee was entitled to a verdict. In his charge he followed five decisions of this court, so holding the first decided in 1887, and last in 1897 : Bacon v. Horne, 123 Pa. 452 ; Smith's App., 117 Pa. 30 ; Long v. Girdwood, 150 Pa. 413 ; Wing v. Bradner, 162 Pa. 72 ; Deni v. Pennsylvania R. R. Co., 181 Pa. 529.

The act of 1855, is a recording act, meant to secure notice by recording in Pennsylvania, to the citizens of Pennsylvania, of assignments affecting property whose situs is therein.

If the act of 1855, be unconstitutional because it accords to citizens of Pennsylvania rights different from those to the citizens of others states, it cannot operate in favor of a citizen of another state to defeat an assignment otherwise clearly valid : Weber v. Samuel, 7 Pa. 499; Speed v. May, 17 Pa. 91; Law v. Mills, 18 Pa. 185; Blake v. McClung, 172 U. S. 239; Green v. Van Buskirk, 5 Wall. 307 ; Cole v. Cunningham, 133 U. S. 129 ; Smith's App., 104 Pa. 388 ; Loftus v. Farmers', etc., Nat. Bank, 133 Pa. 112.

OPINION BY MR. CHIEF JUSTICE GREEN, July 11, 1900 :
The plaintiff, being a creditor of the Burlington Shoe Com-

pany of Vermont, sued out a writ of foreign attachment in common pleas No. 4 of Philadelphia County, Pennsylvania and summoned the defendant as garnishee of that company. On the trial the defendant admitting that he owed $1,952. 80, claimed that he bought the goods for which he owed this money from another company called the Champlain Shoe Company, and gave evidence to show that all the bills were made out in the name of that company, that all the checks he gave, for goods purchased and paid for, he gave to that company, and that all the receipts he took for those payments he took from that company. In this connection he offered to prove and was permitted to do so, that there was such a company duly incorporated under the laws of Vermont, by giving in evidence a certified copy of the proceedings for the organization of that company. This was objected to on the part of the plaintiff and the first and second assignments of error are made to the admission of the offers of testimony on this subject. There was no error in the admission of these offers. They were a part of the defense which could be lawfully made against the plaintiff's claim, to which of course he could reply as he did by showing that the Burlington Shoe Company and the Champlain Shoe Company, were really the same company under two different names, but that was no reason for excluding these offers.

The third and fourth assignments cover the admission of the exemplified copies of the assignment and other papers accompanying the same, made by the Burlington Shoe Company. The plaintiff claimed that this was the company which really sold the goods to the defendant, and that he was the true debtor to that company, and therefore the debt was liable to his attachment. But to this the defendant replied by alleging and undertaking to prove, an assignment for the benefit of creditors made by that company before the plaintiff's writ of foreign attachment was issued in Philadelphia. The Burlington Shoe Company was organized under the laws of the state of Vermont and the assignment was there made, and, therefore, the real question at issue under these assignments of error, was whether such an assignment had been legally made under the law of Vermont. The offer of proof was an exemplified copy of the deed of assignment and of certain other papers required by the law of that state to be executed and filed with the deed of as-

signment.  The offer was objected to because the copy offered
was not a copy of the original deed, nor of a record, but only
a copy of the copy which, under the law of Vermont, was left
at the county clerk's office.  It was argued that the law of that
state did not make a record of the deed of assignment, and,
therefore, the exemplified copy was not the copy of a record,
and hence not admissible as such.  This of course only applied
to the deed and not to the other papers.  But apart from the
proposition that the deed was an instrument of a public charac-
ter, and therefore different from a mere private instrument, it
was shown that the law of Vermont did make provision for
certified copies of instruments such as this.  It was shown
that section 3008 of the Vermont statutes provides that " the
town clerk shall furnish certified copies of any instrument on
record in his office, pursuant to law, on the tender of his fee
therefor ; and his attestation shall be a sufficient authentication
of such copies."  By section 36 of chapter 15 of the laws of Ver-
mont it is provided, " that properly certified copies of such re-
cords as town clerks are required to make may be used in any
court in this state."  Under these sections the assignment being
a paper filed in the office of the clerk " pursuant to law " becomes
an instrument as to which the attestation of the clerk was a
sufficient authentication of it.  And the other section cited
above distinctly directs that certified copies of such records as
town clerks are required to make, may be used in any court in
the state of Vermont.  As the assignment was made in Vermont
by a Vermont corporation its validity and incidents are to be
determined by the law of that state.  As to the legal duty of
the clerk to file a copy of the assignment in his office, the section
2173 of the statute directs that " the assignor and assignee shall
file in the clerk's office in the county where the assignor resides,
and also where the property assigned is situated at the time of
making such assignment, a copy of the assignment and inven-
tory, including choses in action, and of the list of creditors to
be benefited by the assignment, to remain on file for the use
and inspection of persons interested."  It will be seen at once
that all these papers thereupon became matters of record in the
office of the clerk, and as such, certified copies are sufficient
authentication of them, and they may be given in evidence in
the courts.  In this case all these papers were duly filed in the

clerk's office and hence were properly proved by certified copies. These assignments are not sustained. A question of fact arose on the trial as to whether these papers were filed before the time of issuing the attachment in Philadelphia. That writ was received by the sheriff at 12:57 P. M. on July 18, 1898. The assignment, the list of creditors and inventory were all filed July 18, 1898 at 11:10 A. M. and so marked on the record. The court below left this question of priority of filing, to the jury, as also the same question as to the bond. The bond was marked "filed July 18, 1898, and approved." The precise hour and minute of this filing were not stated, but as the bond was required to be given and filed "at the time of making the assignment," the presumption that all things were properly done, arises, and is a sufficient basis upon which to submit that question to the jury. The fifth and sixth assignments are therefore dismissed.

The remaining assignments involve the question of the application of the Act of May 3, 1855 P. L. 415, providing for the recording in this state of assignments for the benefit of creditors, made by persons residing out of the state, to this case. As the plaintiff is a citizen of another state, it was held by the court below that he could not take advantage of the provisions of that act, and thus obtain a priority of lien over the general creditors, by reason of the nonrecording of the assignment within this state in accordance with the act of 1855. This question has been adjudicated by this court adversely to the contention of the appellant, so many times and so positively, that the law must be considered as fully settled on this subject. Thus in Smith's Appeal, 117 Pa. 30, we held that an assignment made for the benefit of creditors by a citizen of another state passes the title to personalty in this state fully for all purposes, and such personalty is to be distributed under the law of the domicil of the assignor. In that case the assignment was made in the state of New York by an assignor there residing to an assignee also residing there. It contained preferences which were valid by the law of New York but were illegal here. It was recorded in this state under the act of 1855, because some of the personal property of the assignor was located in this state. A Pennsylvania creditor who was unpreferred, sought to avoid the effect of the preferences, by having the fund here distributed

according to the law of Pennsylvania, but we held that the whole distribution was governed by the law of New York.

In Bacon v. Horne, 123 Pa. 452, we reaffirmed the foregoing decision and extended it to the case of a foreign attaching creditor, who came into this state and sought by means of a foreign attachment to obtain a prior lien to the general creditors, the assignor and the assignee both being nonresidents. It was said in the opinion: " We do not think the property in question was liable to the foreign attachment. Both the plaintiffs and the defendant in that writ resided in the city of New York. Before it was issued the defendant had made an assignment for the benefit of his creditors. The assignment was made in New York, and was in conformity to the laws of that state. Under all the authorities it passed the title to the property in this state." Recurring to the contention arising under the act of 1855, the opinion proceeded: " It was said however that inasmuch as the assignment was not recorded in this state in accordance with the Act of May 3, 1855, P. L. 415, relating to foreign assignments, and the attaching creditor had no notice of the assignment, the property was liable to the attachment (quoting the act). The manifest object of this act was to protect our own citizens. Hence it was held in Steel v. Goodwin, 113 Pa. 288, that where a foreign attachment had issued after an assignment in another state, but before it was recorded here, and the attaching creditor had no actual notice of such assignment, the attachment was good against such assignment. To the same effect see also Philson v. Barnes, 50 Pa. 230. These cases were well decided but they do not rule this one. The act of 1855 is not invoked by any Pennsylvania creditor seeking its protection. As before observed both these parties plaintiff and defendant, are residents of New York. The plaintiffs came into this state to obtain an advantage by our law which they could not obtain by their own. They are seeking to nullify the law of their own state and ask the aid of our court to do so. This, they cannot have. If for no other reason it is forbidden by public policy and the comity which exists between the states."

As the foregoing decision is an adjudication upon the precise facts of the present case, it is of controlling force, and must be either followed or overruled. As we have no disposition to

overrule it or the several other cases in which the same ruling has been made, we must regard it as of binding force.

In Long v. Girdwood, 150 Pa. 413, we held that a resident of a foreign state cannot by a writ of foreign attachment in this state, obtain preference over an assignment or sequestration for the benefit of creditors of the estate of a citizen of another foreign state. The rule rests on comity between states and the only exception is in favor of our own citizens. Failure to record the assignment in this state as provided by the Act of May 3, 1855, P. L. 415, will not give priority to such foreign attachments as the act was passed for the protection of domestic creditors alone. Our Brother McCollum in an exhaustive opinion reviews all the authorities cited on both sides, and shows clearly that our act of 1855 was passed entirely for the benefit of our own citizens, and is not available in favor of a nonresident creditor proceeding by process of foreign attachment.

In Wing v. Bradner, 162 Pa. 72, we held that, where plaintiff and defendant in a foreign attachment both reside in another state, and the defendant had there made a deed of assignment for the benefit of creditors, which has been duly recorded, or of which the plaintiff had notice, he cannot afterwards bring foreign attachment in this state and thus obtain a preference over the general creditors in the state of the residence of both the parties. In the opinion we said: " It would seem therefore that no preference can be obtained by means of the attachment and subseqnent proceedings, because as to such nonresident attaching creditor the title to the property situated in this state passed by the assignment."

These cases dispose of the present contention. The proposition that the act of 1855, thus construed is unconstitutional in that it violates article 4, section 2 of the constitution of the United States, which provides that " citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," we cannot regard as of any force. A slight consideration of the true character of the question involved will demonstrate this. The assignment having been in a jurisdiction other than our own, prevents any citizen of that or any other jurisdiction, acquiring any preference over other general creditors of the assignor under the law of the former. We hold that the law of the former prevails also upon this subject

against our own citizens.  But a nonresident creditor, who by the law of the former has only right of access to the assigned estate in common with all other creditors, wishes to obtain an advantage over the other creditors by an attachment of assets in another jurisdiction, and we simply say that he cannot do this, because we also hold that the law of the forum carries all the assets, within or without the forum, and the comity of states requires that we should not give him a privilege which he does not possess under his own law to the disadvantage of his fellow creditors.  When there are assets within our own jurisdiction we allow our citizens to have access to them unless they have notice of the prior assignment.  But if the privilege of recording the assignment under the act of 1855 is availed of, so as to give the foreign assignee the benefit of the assignment within our jurisdiction, it may be done, but of course must be done in accordance with our own law as to all assignments. If not so done, and important requirements are omitted, such as would invalidate a local assignment, the same consequences will follow as would follow similar omissions in case of an assignment within our own jurisdiction.  The property within our state being thus accessible to creditors residing here they may exercise their right of access, but creditors of the forum cannot have such rights because the law of the forum by which they are bound forbids it, and the comity of states prevents our law from giving them rights which they do not possess by the law of the forum.  We think it quite clear that there is no invasion of the constitution in this.  The assignments of error are all dismissed.

Judgment affirmed.