Nazareth Cement Company *v.* Union Indemnity
Company et al., Appellants.

Argued November 20, 1934.

Before TREXLER, P. J., KELLER, CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

David H. H. Felix, of Felix & Felix, for appellant.

Frederick H. Spotts, with him William C. Bodine, of Pepper, Bodine, Stokes & Schoch, and George F. Coffin, Jr., for appellee.

OPINION BY STADTFELD, J., February 1, 1935:

On January 6, 1933, the Union Indemnity Company, a Louisiana corporation, was by order of the State of Louisiana declared to be in receivership, in accordance with Act No. 105, of 1898, of the statutes of Louisiana.

On January 10, 1933, a writ of foreign attachment was issued against funds of the Union Indemnity Company, in the hands of the Tradesman's National Bank and Trust Company, by the plaintiff, Nazareth Cement Company, because of a check issued by the Union Indemnity Company on account of certain indebtedness owed by the Union Indemnity Company to the Nazareth Cement Company.

In the meanwhile, on or about January 6, 1933, a petition for ancillary receivers for the Union Indemnity Company was filed in the United States District Court for the Eastern District of Pennsylvania, and on January 20, ancillary receivers were appointed upon this petition.

Appellants filed a rule to quash the attachment which was heard and decided against appellants.

It was agreed between counsel that there was no necessity to take depositions in Louisiana to determine the effect of the Louisiana statute, but that the Louisiana cases cited would be taken as correct.

From the order dismissing the motion to quash, this appeal was taken on behalf of defendant.

Appellants rely solely on the contention that the appointment of statutory receivers by the State of Louisiana dissolved defendant corporation, and that the same no longer existed in fact and attachment proceedings would therefore not lie against it.

On behalf of plaintiff, it is denied that the result of the appointment of State receivers was the dissolution of the defendant; that the decree of court therein in no way authorizes or directs the dissolution of defendant company. The answer further averred that no rule of comity requires that the writ should be quashed, because Act 227 of July 16, 1932, P. L. 722 of the State of Louisiana, provides for the appointment of receivers in Louisiana for insolvent foreign insurance companies, and for a method by which the assets of a foreign insurance company may be made available for the Louisiana creditors.

Attached to the answer to the petition to quash the attachment is a certified copy of the order of the Louisiana Court appointing receivers for defendant company. Under said order the said company is "enjoined and restrained without bond, from further proceeding with its business, or any part thereof. It is further ordered, adjudged and decreed that Clay W. Beckner and S. Sandford Levy be, and they hereby are appointed receivers to take possession of the property and effects of defendant, Union Indemnity Company, and to settle its affairs, subject to such rules and orders as this court may from time to time prescribe; ......"

Whatever may have been the effect of the order restraining the company "from further proceeding with its business," the assets of the company remained to be administered and the proceeds subjected to the just claims of its creditors and its stockholders.

Appellants cite in support of their contention the cases of Levy v. Union Indemnity Co., 146 So. 182, and Graves v. Merrill Engineering Company 148 So. 453.

In Levy v. Union Indemnity Company, supra, the plaintiff had recovered a judgment against the Union Indemnity Company. The Union Indemnity Company had prosecuted an appeal and that appeal was pending when receivers were appointed for it on January 6, 1933. The surety upon the appeal bond of the Union Indemnity Company then moved for an indefinite continuance of the case on the ground that the corporation could not prosecute the appeal. The highest court of Louisiana refused the motion, but entered an order dismissing the appeal of the Union Indemnity Company on the ground that by the appointment of the receivers it so far ceased to exist that it could not prosecute the appeal.

In Graves v. Merrill Engineering Company, supra, the plaintiff instituted suit to recover damages for personal injuries resulting from an accident on a highway in the course of construction. The plaintiff brought a suit against the Merrill Engineering Company, the contractor, the Midland Construction Company, a sub-contractor, and the Union Indemnity Company which carried the public liability insurance for both contractors. The plaintiff recovered a judgment against all three and they all appealed. Following the appeals, receivers for the Union Indemnity Company were appointed, and the plaintiff moved to dismiss the appeal of the Union Indemnity Company on the ground that it "has utterly ceased to exist as a juridical person." The court allowed the motion.

The receivers, for reasons best known to themselves, did not elect to intervene and prosecute the appeals previously undertaken by the Union Indemnity Company. There was, therefore, no one on the record who had any standing to prosecute the appeal. The de-

cisions naturally followed. In the two opinions, the court speaks about the termination of the existence of the corporation and that language is, of course, accurate insofar as applied to the facts before the court. There is nothing in either case warranting the conclusion that a writ of foreign attachment, otherwise valid in Pennsylvania, would be invalid by reason of the appointment of receivers in Louisiana. Furthermore, in both cases it is perfectly clear that the receivers for the Union Indemnity Company could have intervened and prosecuted the appeals if they had cared to do so. In the case at bar, the ancillary receivers have intervened and become parties defendant and entered a general appearance. There is no reason on the face of the record, therefore, why the case should not proceed to a hearing on the merits.

A foreign attachment is primarily a proceeding in rem: Glenny v. Boyd, 26 Pa. Superior Ct. 380. In Kennedy v. Schleindl, 290 Pa. 38, 137 A. 815, Mr. Justice SCHAFFER, p. 40, said: "Its purpose is to seize property of a non-resident defendant which is within the jurisdiction, and the object in its use is that, through its grasp on his property, the defendant may be compelled to come into the jurisdiction to meet the debt due: Raymond v. Leishman, 243 Pa. 64."

It has been held by the appellate courts of our State that where subsequent to the appointment of receivers at the domicile of a foreign corporation, but prior to the appointment of ancillary receivers in Pennsylvania, a foreign attachment is levied in the latter state, the attachment is valid: Solis, Receiver v. Blank, 199 Pa. 600, 49 A. 302. The decision is the logical result of the rule that receivers have no rights or powers outside the jurisdiction of the court of their appointment, except as a matter of comity, and that comity will not be extended when so doing would result in prejudice to Pennsylvania creditors. Solis v.

Blank, supra; Frowert v. Blank, 205 Pa. 299, 54 A. 1000; Smith v. Electric Machinery Co., 83 Pa. Superior Ct. 143 (1924). In the last case cited, we quote from the opinion of Judge TREXLER, late President Judge, as follows: "There seems to have been abundant authority for the position taken by the lower court. Our Supreme Court has decided that while a receiver has no extra-territorial authority, yet his appointment will, on the ground of comity, be recognized in Pennsylvania, subject, however, to the limitation that the receiver's claims do not come in conflict with the right of citizens of our own state. Such appointment will not prevail over contemporaneous and subsequent attachments by Pennsylvania courts. When the claims of a foreign receiver are brought into conflict with those of our own citizens, the latter will have preference, because it is hardly just, and certainly not expedient, to remit them to a distant jurisdiction for what is close at hand and can be obtained at home. Whilst on the principle of comity the powers and rights of a foreign receiver will be recognized, this principle is never extended or enforced to the embarrassment or loss to local creditors. See Solis v. Blank, 199 Pa. 600; Frowert v. Blank, 205 Pa. 299."

There is nothing in the case of Farmers & Mechanics Bank v. Little, 8 W. & S. 207 (1844), contrary to the above cases. That case held that in a suit commenced by foreign attachment by a non-resident against a corporation as defendant, the civil death of the corporation before judgment against it produced by a decree of *forfeiture* of its charter, dissolves the attachment. The court reasoned that the death of an individual defendant dissolved the attachment and so by analogy, the death of a corporate defendant would dissolve an attachment. A corporate defendant is dead when a decree forfeiting its charter has been entered. In that

case there was no one who had any standing to appear for defendant.

A case almost identical with the instant case is that of Hammond v. National Life Assn., 69 N. Y. Supplement 585 (1901) (Appeal dismissed 168 N. Y. 262): "Interstate comity does not require us to hold that the necessary effect of the Connecticut decree was absolutely and at once to put an end to the rights of the corporation in this state until that decree had been presented to the courts of this state, and some judgment had been entered upon it under such circumstances as to give some one here the right to enforce it. If we should hold that the corporation is dead in this state the moment the decree is entered in Connecticut, it results that there is no one in this state who could sue in the name of the corporation, or against whom an action can be brought; and so the consequence would be that, although the corporation might have by far the larger portion of its assets in this state, the courts would be powerless to protect those assets for our own creditors. There is no rule of law requiring such an effect to be given to the judgment of a foreign state. When the judgment of dissolution has been brought to the attention of our courts, and steps are taken to enforce it here, all that we are required to do is to give it the same force and effect that it would have in the foreign state. But until that time the status of the corporation is not changed in this state, and the remedies of our own citizens are not taken away. It was said by Judge FINCH in the case of Rodgers v. Insurance Co., 148 N. Y. 34, 38, 42 N. E. 515: 'That the foreign corporation, dissolved and dead in the domicile of the origin, should be deemed alive in the foreign state, so far as to save the remedies of its own citizens against property within its own jurisdiction, is entirely possible, and not at all unreasonable.'

" 'We might go further, and say that to consider a foreign corporation dissolved and dead in the domicile of its origin so far alive in this state as to permit an action to be brought against it is exceedingly reasonable, and quite within the rules of good sense, and not forbidden by any rule of positive law.' " To same effect see opinion of REEDER, J., in Lett v. Thurber Whyland Co., 15 Pa. C. C. 666.

To permit the ancillary receivers to move to quash the attachment, is to repudiate the ground upon which the motion is based. In addition, they have entered a general appearance. As stated in Hammond v. Nat. Life Assn., supra: "All the appellant's rights then come into existence by virtue of his appointment as receiver, in an action which was begun after the corporation had been dissolved by the Connecticut decree. If the corporation was dead on the 7th of July, 1899, so that no action could be brought against it in this state by a creditor on the 15th of July, 1899, it is difficult to see why it was not also dead on the 28th of July, and how the court had any more jurisdiction to appoint an ancillary receiver of the corporation in one action than to issue a warrant of attachment in another. For this reason the appellant is not aggrieved by the denial of his motion, because he has shown no title to the property of the corporation in this state, and therefore he has no right to ask for the reversal of this judgment."

In view of the provisions of Act 227 of July 16, 1932, P. L. 722, of the State of Louisiana, referred to in paragraph seven of the plaintiff's answer, it must be conceded that if the facts were reversed and a Louisiana creditor in Louisiana were trying to collect his claim out of the assets of a Pennsylvania insurance company in Louisiana, the Louisiana courts would see that he got it. No rule of comity requires that Pennsylvania courts should direct that assets in Pennsyl-

vania should be turned over to the receivers of a Louisiana corporation. It might be so if Louisiana would do the same thing.

"...... Since the Act of 1917 (April 26, P. L. 102) allows an appeal (like the one before us) from the refusal to quash a writ, which is an interlocutory order, the usual rule governing appeals from such orders applies, and the record must present plainly a clear abuse of discretion, before a reversal can be had."—Moschzisker, C. J., in Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468, 476, 116 A. 372.

We see nothing in the record which would justify a reversal.

The assignments of error are overruled and judgment affirmed.