## Keystone State Corporation v. Union Indemnity Corporation

*Fox, Rothschild, O'Brien & Frankel,* for plaintiff.

*Arthur Littleton, Felix & Felix,* and *John A. Skelton, Jr.,* for defendant.

BROWN and HEILIGMAN, JJ., June 9, 1939. — This case is before the court in banc on petition and rule to intervene, to strike off judgment entered against defendant in an action commenced by writ of foreign attachment, and to dissolve the attachment. The petition was filed by Robert J. Sterrett, ancillary receiver for the Union Indemnity Company by virtue of appointment by

the United States District Court for the Eastern District of Pennsylvania, who was appointed ancillary receiver for the company by the Court of Common Pleas of Dauphin County. Plaintiff has filed an answer and supplemental answer to the petition.

On January 6, 1933, receivers for the Union Indemnity Company, a Louisiana corporation, defendant in this case, were appointed by the Civil District Court for the Parish of Orleans, State of Louisiana.

On January 10, 1933, a petition for appointment of ancillary receivers was filed in the United States District Court for the Eastern District of Pennsylvania.

Two days later, on January 12, 1933, a writ of foreign attachment was issued out of this court at the suit of plaintiff, a Pennsylvania corporation, and on the same day was served on the Fidelity-Philadelphia Trust Company, garnishee, against a bank account and certain bonds of defendant in the hands of the garnishee. Plaintiff's claim is based on an alleged failure of defendant to comply with the terms of certain insurance policies.

Thereafter, on January 19, 1933, a petition was filed in the Court of Common Pleas of Dauphin County, requesting the appointment of the Insurance Commissioner of Pennsylvania as ancillary receiver of defendant.

On January 24, 1933, ancillary receivers were appointed by the federal court, and on February 9, 1933, the Insurance Commissioner was appointed ancillary receiver by the Dauphin County Court. Both decrees contain orders restraining creditors from prosecuting actions against defendant corporation. Under a written agreement dated September 25, 1933, both sets of ancillary receivers proceeded to liquidate the assets of defendant within this state.

On February 26, 1937, plaintiff having proceeded with its action against defendant, commenced by writ of foreign attachment, judgment was entered against defendant for want of an appearance, and on March 14, 1938,

damages were assessed in the sum of $62,518.06. There remains to be tried the issue between plaintiff and the garnishee, which trial has been stayed by the present rule.

Plaintiff relies on Nazareth Cement Co. v. Union Indemnity Co. et al., 116 Pa. Superior Ct. 506, as decisive of the issue here presented. That case arose out of the same set of facts, except for the difference in the identity of plaintiff and garnishee, and in certain immaterial details. There, as here, the writ of foreign attachment was issued subsequent to the filing of the petition for ancillary receivers in the federal court, but prior to their appointment. The record in that case discloses that the material averments of the petition were virtually the same as those in the instant case. In that case, however, as stated in the opinion of the Superior Court at page 508, petitioners relied "solely on the contention that the appointment of statutory receivers by the State of Louisiana dissolved defendant corporation, and that the same no longer existed in fact and attachment proceedings would therefore not lie against it." This argument was overruled by the Court, and no effect was given to the foreign receivership as against a Pennsylvania attaching creditor. It is again urged in the present proceeding, but we need add nothing to the opinion of the Superior Court on this point.

Although the Superior Court, in stating the facts, and in relation to the above contention, referred to the petition filed in the federal court and the appointment of ancillary receivers, no further effect was given thereto. In the present case, petitioners are also contending that the judgment entered against defendant is void because it conflicts with the decrees of the federal court and of the Dauphin County Court restraining prosecution of creditors' actions, and that, therefore, the attachment is also void. Since this argument was apparently not urged upon or considered by the Superior Court in the former case, it cannot be said that this issue has been decided. If both parties were the same, the former decision might be bind-

ing upon them now, on the doctrine of res adjudicata. Such, however, is not the case, and so we must now determine the question.

It is a universal rule that general receivers, such as were appointed by the federal court, take the property of the corporation as they find it, subject to all existing liens and incumbrances thereon: High on Receivers (4th ed.), sec. 138, p. 159; 1 Clark on Receivers (2d ed.), sec. 269, p. 354, and sec. 275, p. 362; Philadelphia Trust Co. v. Northumberland County Traction Co. et al., 258 Pa. 152, 172. However, when the jurisdiction of the receivership court vests, and the property of the corporation passes into custodia legis, no valid liens may thereafter be acquired against it, and no other court of concurrent jurisdiction may deal with it: Glenn on Liquidation, pp. 838-839. "Having taken local assets into its custody for the purpose of fair distribution, the ancillary court not only has the power, but is under the duty as a matter of course, to enjoin the institution or prosecution of local suits. This removes the danger of judgments or attachments being procured after it has assumed jurisdiction": Glenn on Liquidation, p. 849, §587.

Defendant contends that Section 265 of the Judicial Code of March 3, 1911, 36 Stat. at L. 1162, 28 U. S. C., sec. 379, renders invalid the injunction by the federal court insofar as it may seek to restrain proceedings in a state court. A well-settled exception to this rule, however, recognizes the power of a federal court to issue such injunctions in protection or aid of its *previously-acquired* jurisdiction. See Quinn v. Bancroft-Jones Corp., 12 F.(2d) 958; Riehle v. Margolies, 279 U. S. 218, 223.

It is thus obvious that the sole question now to be decided is: At what point did the jurisdiction of the federal court vest and the property of the corporation in Pennsylvania pass into custodia legis so as to bar the acquisition of liens or the institution or prosecution of suits affecting the property in other courts? The ancillary receivership in the Dauphin County Court cannot

affect the lien of the attachment since it was imposed upon the property before proceedings in that court were commenced. For this reason, only the ancillary receivership in the federal court need be considered in this regard.

It is the general consensus of text-book authority that the jurisdiction of the receivership court and the possession of the receiver vest at the time the receiver is appointed, but not earlier: High on Receivers (4th ed.), sec. 136, pp. 156-158; Beach on Receivers (2d ed.), p. 208; 1 Smith on Receivers (2d ed.), sec. 31; p. 127; Gluck & Becker, Receivers of Corporations (2d ed.), sec. 40, pp. 162-164; 1 Clark on Receivers (2d ed.), sec. 288(a), p. 378.

In state courts, where it has become important to fix the time when the property passes into the control of the receivership court, there is a diversity of views. It has been held, in accordance with the above authorities, that the possession of the receiver dates from the time of his appointment, and not before that time: Smith et al. v. Sioux City Nursery & Seed Co. et al., 109 Iowa 51, 55; The Artisans' Bank v. Treadwell et al., 34 Barb. (N. Y.) 553, 559; Van Alstyne v. Cook et al., 25 N. Y. 489, 496; Becker v. Torrance, 31 N. Y. 631, 641; American Clay Machinery Co. v. New England Brick Co. et al., 87 Conn. 369, 374. On the other hand, a few courts have decided that the authority of the receiver refers back to the time when suit for his appointment was commenced or when service of the petition or bill was made: Riesner v. Gulf, Colorado & S. F. Ry. Co. et al., 89 Tex. 656, 661; Davis et al. v. Mazzuchelli et al., 238 Mass. 550, 556; Cobb et al. v. Camden Savings Bank, 106 Me. 178, 184. Only the Massachusetts case expressly holds that the jurisdiction of the court vests as far back as the mere commencement of the action for the appointment of a receiver; something more is required in the actual holdings of the other cases. In Maryland, the rule is that the property does not pass into the hands of the receiver until he takes physical possession of it: Obrecht v. Ensor et al., 162 Md. 391, 394.

Finally, it has been held that choses in action and equitable assets pass into custodia legis at the commencement of the suit for a receiver, but the receiver does not acquire control of tangible property so as to bar further attachments until his appointment: Battery Park Bank v. Western Carolina Bank, 127 N. C. 432, 434. It will be noticed that in all these cases, the issue was whether a lien acquired by an individual creditor was valid as against a receiver of the property, and in all of them it was necessary to decide the exact time when the possession of the receiver began. There are many other cases in which the rule is stated that all rights are fixed as of the time of the appointment of the receiver, but in these the present issue, as between the date of filing the bill and the date of appointment of the receiver, was not involved. From the cases in which the issue was squarely decided, and from the text-book authorities, it may be concluded that the weight of authority, including that in the important commercial state of New York, supports the view that liens acquired prior to the *appointment* of a receiver are not affected by the receivership.

There is a long line of cases in the federal courts which hold that the jurisdiction of a receivership court vests at the time the bill for appointment of a receiver is filed: Hutchins v. Pacific Mut. Life Ins. Co. of California et al., 20 F. Supp. 150, 152; McKinney et al. v. Landon et al., 209 Fed. 300, 305-306; O'Neil, Ins. Com'r., et al. v. Welch et al., 245 Fed. 261, 266; Harkin et al. v. Brundage et al., 276 U. S. 36, 43; Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, 294 U. S. 189, 196. See also 1 Clark on Receivers (2d ed.), sec. 289 (a), p. 381. Close examination of these cases, however, reveals that, in general, the issue was not whether a prior lien against the property was valid, but rather, which of two courts had jurisdiction to appoint a receiver and control the property. In other words, the rule was applied in order to avoid unseemly conflict between two courts of concurrent

jurisdiction, each of which was attempting to accomplish substantially the same result.

In Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, supra, where such a situation was presented, the United States Supreme Court stated (at pp. 195-196) : "To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, . . . and to protect the judicial processes of the court first assuming jurisdiction, . . . the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other. This is the settled rule with respect to suits in equity for the control by receivership of the assets of an insolvent corporation. . . . Where the assertion of jurisdiction by the two courts is nearly simultaneous, it becomes important, as in the present case, to determine the precise time when the jurisdiction attaches. If the two suits do not have substantially the same purpose, and thus the jurisdiction of the two courts may not be said to be strictly concurrent, and if neither court can act effectively without acquiring possession and control of the property *pendente lite*, the time of acquiring actual possession may perhaps be the decisive factor. . . . But when the two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated as in constructive possession of the property, and as authorized to proceed with the cause. . . . Jurisdiction thus attaches upon the filing of the bill of complaint in court, at least where process subsequently issues in due course. . . . The confusion and uncertainty are thus avoided which might otherwise result from the attempt to resolve the troublesome question of what constitutes actual possession and to determine priority of service of process in the two suits." The limited application of this principle is plain from the conditions that are attached to it and from the declaration by the

Supreme Court of its purpose. It is a rule of convenience for the orderly administration of a dual court system, not a rule by which the rights of individual creditors are to be determined. That this is the sole effect of the rule is supported by the fact that when a federal court was presented with the question of the validity of the lien of a judgment obtained between filing and service of a bill for the appointment of a receiver and the actual appointment, it held that for this purpose jurisdiction of the receivership court did not attach on the mere filing of the bill, and that not until the order was made appointing the receiver did the court have custody of the property so as to bar further liens: Wheeler v. Walton & Whann Co., 65 Fed. 720, 723.

If the issue in the present case were the priority of jurisdiction, as between the federal court and the Dauphin County Court, to appoint an ancillary receiver for Pennsylvania property, the rule enunciated in the federal cases would be applicable. But when rights of third parties are to be affected, it seems just to require some action by the court itself to fix those rights. See Van Alstyne v. Cook et al., supra. The first definitive action by a receivership court is the order of the court appointing a receiver. Not until such an order should creditors be barred from pursuing their legal remedies.

This conclusion is further supported by the distinction drawn by most of the federal courts, as illustrated in the above quotation from the opinion in Penn General Casualty Co. v. Pennsylvania ex rel. Schnader. It is clear that the rule therein enunciated is applicable only "when the two suits have substantially the same purpose". On the other hand, when "the two suits do not have substantially the same purpose, and thus the jurisdiction of the two courts may not be said to be strictly concurrent", it is suggested that jurisdiction may not vest until actual possession of the property is acquired by one of the courts. See also Harkin et al. v. Brundage et al., supra. Certainly an ancillary receivership for the pro rata distribu-

tion of the assets of a corporation cannot be said to have substantially the same purpose as an action by foreign attachment, instituted by a single creditor in an attempt to realize upon his own claim in full.

While it is impossible to reconcile all the cases, and it must be recognized that there is a diversity of judicial opinion on this subject, it may be noted that in at least one of the few cases holding that filing of the bill and service thereof vest control of the property in that court, the receivership proceedings were prosecuted under a state statute, and the court expressly refers to this fact: Cobb et al. v. Camden Savings Bank, supra. The peculiar nature of statutory proceedings is also assigned as a reason for this rule by certain text writers. See 1 Smith on Receivers (2d ed.), sec. 31, p. 139; 53 C. J. p. 107; 20 Ann. Cas. 551, 554. In the present case, the federal ancillary receivership was not statutory, but was an equity receivership. While the Insurance Commissioner of Pennsylvania was appointed ancillary receiver by the Dauphin County Court under a statute of Pennsylvania, it has already been pointed out that this action can in no event affect plaintiff's attachment, since even the date of filing the bill was subsequent thereto.

In Pennsylvania, it has been held "that *the appointment of the receiver, and not the filing of a bill praying therefor,* is to be taken as changing the situation in such manner as to put an end to the right of the insolvent company's debtors to acquire claims against it capable of being set off against its demands when sued for by the receiver": United States Brick Co., to use, v. Middletown Shale Brick Co., 228 Pa. 81, 87. (Italics supplied.) While this case may be distinguishable on its facts, the principle clearly supports the conclusion which we have reached. In addition, in many other cases it has been said that rights are fixed as of the date of the appointment of a receiver, although the precise question in the instant case was not presented: Blum Brothers v. Girard National

Bank et al., 248 Pa. 148, 153; Shipler et al. v. New Castle Paper Products Corp., 293 Pa. 412, 418; Emlen's Estate, 333 Pa. 238, 248. In view of these cases, and the weight of authority in other states, we have no hesitancy in adhering to this rule.

Having determined that the foreign attachment, executed prior to the appointment of ancillary receivers, is valid, it would seem to follow as a matter of course that the judgment against defendant, although entered after the decrees of both the federal and Dauphin County courts enjoining further prosecution of creditors' actions, should be allowed to stand, entitling plaintiff to a preference, since to hold otherwise would be to nullify the lien of the attachment. For purposes of clarity, however, this collateral question will be considered.

It is clear that the injunction of the federal court can have no effect to restrain actions in a state court commenced *prior* to the acquisition of jurisdiction by the federal court, in view of the express prohibition of Section 265 of the Judicial Code, supra. See Riehle v. Margolies, supra. An examination of the nature of a foreign attachment prompts the same conclusion as to the decree of the Dauphin County Court, even in the absence of a similar statutory provision as between the courts of this state.

It is true that a foreign attachment is equivalent to a summons in a personal action, and that its primary purpose is to compel the constructive presence in court of a defendant who is beyond the reach of ordinary process: Raymond v. Leishman, 243 Pa. 64, 69. This, however, is not the only incident of the writ of foreign attachment. The Act of June 13, 1836, P. L. 568, sec. 50, 12 PS §2941, provides: "The goods and effects of the defendant in the attachment, in the hands of the garnishee, shall after such service, *be bound by such writ*, and be in the officer's power, and if susceptible of seizure or manual occupation, the officer shall proceed to secure the same, to answer and abide the judgment of the court in that

case . . .". (Italics supplied.) "The lien then begins": 3 Trickett, Liens in Pennsylvania, p. 484. "The lien of the attachment begins with the actual service of the attachment of the goods and lands of the defendant, in pursuance of the command of the writ, not with the recovery of the judgment thereon against the defendant": 1 Trickett, Liens in Pennsylvania, p. 472. The judgment relates back to the lien secured by service of the writ: Lehigh Coal & Navigation Co. v. Skeele Coal Co., 28 Pa. Dist. 28, 29. "The judgment recovered regularly in the foreign attachment is simply an instrument for enforcing the previously-acquired lien of the attachment . . .": 1 Trickett, Liens in Pennsylvania, p. 474.

Although the lien acquired by the plaintiff by mere service of the writ is inchoate, requiring the later judgment to perfect it, the lien of the writ has been given extensive effect. Thus, priority between a foreign attachment and an assignment for the benefit of creditors depends on whether the former was issued before the latter was filed: Hilliard v. Enders & Co., 196 Pa. 587, 592. A foreign attachment duly served and levied has priority over ordinary writs of execution issued at a later hour on the same day: Warner's Appeal, 13 W. N. C. 505; Appeal of Jaffray & Co., 13 W. N. C. 151. A foreign attachment issued and served before the recording in this State of a foreign assignment for the benefit of creditors takes precedence thereto: Steel et al. v. Goodwin et al., 113 Pa. 288, 292. Where defendant was adjudicated bankrupt more than four months after service of the writ of foreign attachment, but less than four months after judgment was obtained, it was held that the earlier date determined the time of the lien, which was, therefore, unaffected by the subsequent bankruptcy: Lehigh Coal & Navigation Co. v. Skeele Coal Co., supra.

In view of these and many other cases recognizing the force and effect of the lien acquired by service of the writ of foreign attachment as against subsequent events, it is reasonable to conclude that such a lien could not be di-

vested by the decree of another court enjoining further prosecution of actions. Yet this would be the effect of holding that the injunction of the Dauphin County Court prevented plaintiff from acquiring a valid judgment against defendant corporation.

It has frequently been said by our Supreme Court that a receiver has the status of an executing or attaching creditor: Shipler et al. v. New Castle Paper Products Corp., supra; Sullivan Machinery Co. v. Griffith, 294 Pa. 422, 424. If this be so, then, according to the cases cited above, the ancillary receiver appointed by the Dauphin County court cannot prevail over plaintiff, whose attachment was prior to the receiver's appointment.

In Ex rel. Nenzel v. District Court, 49 Nev. 145, at p. 154, it was said: "When a creditor lawfully obtains an attachment against property by levy of the writ by the sheriff, the law gives him not only the right to have his debt paid out of the proceeds of that property, but it also gives him the absolute right to have that property retained intact in the hands of the sheriff until such time as he may obtain judgment and issue execution. . . ." Hence, a subsequently-appointed receiver could not deprive the sheriff of his possession.

There are authorities and cases holding that no preference can be acquired by obtaining a judgment against a corporation after the appointment of a receiver therefor: 1 Clark on Receivers (2d ed.), sec. 611, p. 835; Cowan et al. v. Pennsylvania Plate Glass Co., 184 Pa. 1, 15. The reason for this rule, however, is that the appointment of a receiver bars the further acquisition of liens against the property in custodia legis, and the lien of an ordinary personal judgment dates merely from its entry. But the rule is different where the judgment "relates back to a time previous to the appointment of a receiver": 1 Clark on Receivers (2d ed.), sec. 623, p. 851. In such cases, the principle barring future liens is not violated. Furthermore, the property seized by the sheriff under a writ of

foreign attachment is in custodia legis: 10 Standard Pennsylvania Practice, pp. 315-520. Consequently, the attached property in the present case was in the custody of this court prior to the decree of the Dauphin County Court. Therefore, that decree cannot affect such property, since "it is a rule of general application, that where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court": Byers v. McAuley, 149 U. S. 608, 614.

It is also true that the lien of a foreign attachment is of a special nature, and that it may be divested by certain subsequent events. Thus, it has been held that the death of the defendant before plaintiff obtains judgment against him will dissolve the attachment: Reynolds v. Nesbitt, 196 Pa. 636, 638. The Superior Court, however, in Nazareth Cement Co. v. Union Indemnity Co. et al., supra, having before it similar facts and the same petitioners as in the present case, held that the appointment of a foreign receiver did not render the defendant corporation "dead" so as to bar a subsequent attachment by a Pennsylvania creditor. In the absence of persuasive authority to the contrary, and in view of the principles stated above, we hold that the subsequent appointment of ancillary receivers likewise can have no such effect on a previous attachment, and cannot prevent the acquisition of a judgment in perfection of the lien of the attachment.

It may be that comity between courts and the desire to aid the orderly administration of the ancillary receivership will compel plaintiff to go into the federal court, or, under the aforementioned agreement between the respective receivers, into the Dauphin County Court, to enforce its judgment. A creditor, even if he holds a lien, may not be entitled to enforce it in a particular manner after a receiver has been appointed. See 1 Clark on Receivers (2d ed.), sec. 275, p. 363. Consequently, the receivers may be permitted to acquire possession of the attached property, reserving to the plaintiff "the benefit of the

security of the attachment" and the "legal priority thus obtained." See 1 Clark on Receivers (2d ed.), sec. 610 (*a*), p. 835. Compare Ex rel. Nenzel v. District Court, supra, at 154-155, and cases cited therein. However, it is unnecessary to decide this point in the present proceedings. When the question arises, which may be in the trial on the issues raised by the interrogatories and the garnishee's answers thereto, it will be determined on the basis of expediency and comity.

The rule to strike off the judgment and dissolve the attachment is, therefore, discharged.