## Fuller *versus* Bryan.

1. *Foreign* attachment is a remedy against debtors who are non-resident in the Commonwealth, and are absent. *Domestic* attachment is a remedy against resident debtors absenting or concealing themselves.

2. The mere absence of a debtor from this state, engaged in a contract on a railroad in Maryland, he not having removed his family with him, his wife having gone to her father in Pennsylvania, in which state the debtor had been residing for years and of which he was a native, without any evidence appearing of his intention to change his residence, will not render his property liable to *foreign attachment*.

ERROR to the Common Pleas of *Fayette county*.

Samuel Bryan, a native of Pennsylvania, resided for several years in Fayette county, Pennsylvania. About June, 1850, he removed with his family to Greensburg, Westmoreland county, where he rented a house till the 1st April, 1851. On the 3d January, 1851, he rented another house in Greensburg, for the term of one year, from the 1st April, 1851. He took possession of it, and paid the rent in advance till 1st October, 1851. During portions of this time, he was engaged in erecting buildings in Westmoreland, Washington, and Greene counties, Pennsylvania. During the same time, he had a contract on the Baltimore and Ohio Railroad, in Maryland. It was not disputed that he was a resident of Greensburg from June, 1850, till 1st April, 1851. But it was alleged, that about the 15th April, 1851, he broke up housekeeping; that his wife and family went to Harrisburg to reside with her father, and that he had then gained a residence in Maryland, and never returned to Pennsylvania to reside.

On the part of the *plaintiff*, it was testified by a witness, that he was to have had possession, on the 1st August, 1851, of the house occupied by Bryan. That he did not get possession till about the first of September. The agreement, by which he was to have possession, was made with Bryan. Bryan had possession of one room until after the middle of September. His goods were in the room. The goods were finally boxed up and taken away. The direction on some of the boxes was to Harrisburg. His impression was that Mrs. Bryan remained until the last of August or 1st of September.

On the other side, it was testified by another witness, that on the first of April, 1851, Bryan moved his things out of the house in which he had lived in Greensburg into another house, where they were temporarily stored away; that his wife and family soon after left, he believed the same week, and never returned until about the 21st of August, 1851, when she came for the purpose of taking away her things; that the witness helped her to pack them up, and she never went to housekeeping there, but boarded for a

[Fuller *v.* Bryan.]

few days, when she left; .and that during this time, and for a long time before, Bryan was in Maryland, where he had a contract on the railroad.

Another witness said, that the family of Bryan left Greensburg on the 15th day of April, 1851, to go to Harrisburg on a visit, and did not return till the 19th of August following, when they remained nine or ten days; that Bryan himself, during the absence of his family, was several times in Greensburg; that when Mrs. Bryan left, the key was given to the witness, and on her return it was handed to her.

Bryan never had his family in Maryland, and it was alleged, on part of the defendants, that he was not there constantly; that his contracts in Pennsylvania received. a considerable share of his time and attention.

In August, 1851, he failed in Maryland. On the 14th August, 1851, Dr. Fuller, the plaintiff, and others issued writs of *foreign attachment* against Bryan, which were executed on the same day, on his real estate in Uniontown, Fayette county. It was stated, on the part of the defendants in error, that at the time these attachments were issued, Bryan was in Pennsylvania, either in Westmoreland county or on his way to Harrisburg, and that he left for California in the fall or winter of 1851, taking his wife with him.

To the same term to which the attachments issued suits were brought against Bryan by Ann Morrison and others, and judgments were obtained by other persons on judgment bonds.

On the 1st of September, 1851, rules on the plaintiffs in the foreign attachments were obtained to show cause why the attachments should not be dissolved, on the ground that at the time of the issuing and execution thereof, the estate of Bryan was not liable to foreign attachment.

The question was whether he was a resident of this Commonwealth on the 14th August, 1851, when the writs of foreign attachment issued.

GILMORE, J.—"It is said by Mr. Justice GRIER, in White *v.* Brown, 1 *Wallace* 217, that a man cannot be considered a vagabond or person without any domicil, for the domicil of his origin is not abandoned until a new one has been intentionally and actually acquired." It is true there is a distinction between a domicil and residence: a domicil may be called a permanent residence; so it may happen that a person may lose his residence without losing his domicil of origin. But we think when one has a known residence, when he has a house provided for his family, and has therein his household goods, to gain a counter residence, or to lose his residence of origin, it must appear from the circumstances that his removing out of the Commonwealth was with a view of remaining and obtaining a residence. Here he was engaged

VOL. VIII.—19　　　　N

as a contractor on a railroad, an employment necessarily temporary, and, so far as locality was concerned, of a shifting nature.

In some respects, this case is not unlike Nailor *v.* French, 4 *Yeates* 241 ; but it differs in this important particular ; French had a wife and children living in Philadelphia, but it appears he had been separated from them five or six years before he left; so that the residence of his family was wholly apart from him, and could not determine his domicil. But here the defendant had rented a house and lot, and paid the rent a half-year in advance; his household goods had actually been moved into the house; and we might infer from the evidence, that if not actually occupied from the 1st to the 15th of April, when Mrs. Bryan left for Harrisburg, it was in every respect suitable to be occupied. It is not customary to rent a house and lot for a whole year, merely for the purpose of stowing away goods. This, in the opinion of the Court, clearly evinces an intention of making Greensburg a place of residence. In Lazarus Barnett's case, 1 *Dallas* 152, SHIPPEN, Prest., said, if ' a man introduces his family here, takes a house, engages in trade, contracts debts, and after some time runs away, with design to defraud his creditors, he ought surely to be considered such an inhabitant as not to be an object of the foreign attachment, but of the domestic one.' However, if he would withdraw himself from the state with the intention of gaining a residence elsewhere, he would be considered subject to a foreign attachment the moment he left the confines of the state. No certain rule has been established fixing what circumstances will create a new residence within the Commonwealth. But we are satisfied that what is proven here shows that he was a resident of Pennsylvania at the date of issuing this attachment.

" The rule must therefore be made absolute."

It was assigned for error, 1. That the Court erred in dissolving the attachment.

2. In deciding that the property of Bryan was not the subject of foreign attachment by reason of his not being a resident of Pennsylvania.

*Patterson* and *Kaine,* for plaintiff in error.

*Howell,* contrà.—It was stated that Bryan had not made Maryland his place of residence; his occasional visits there were for a particular purpose. That it was evident from his renting a house for a year from 1st April, 1851, that he designed to remain there during that period. If he was liable to any species of attachment, it was to a domestic attachment: cited Lytle *v.* Freeman, 1 *Dallas* 480 ; Barnett's case, *Id.* 152; 2 *Miles* 67, Shipman *v.* Woodbury.

The Act of 1705, sec. 3, uses the words " *not resident or residing within this province.*"

[Fuller *v.* Bryan.]

The Act of March, 1723, sec. 12, uses the words, "*not inhabitants of this province.*"

The word "*residing*" is used in the Act 13th June, 1836.

The opinion of the Court was delivered, December 20, by

LOWRIE, J.—Where the law distinguishes, we look for some difference, and perhaps for some contrast; and therefore when it provides one remedy by foreign, and another by domestic attachment, we expect them to be applicable to different and even contrasted cases, and such is plainly the fact.

Foreign attachment is a remedy against debtors that are absent and non-resident; while domestic attachment is a remedy against resident debtors absenting or concealing themselves. Absence or its equivalent gives the remedy by attachment of one kind or the other. Residence and non-residence are the contrasted elements in the definitions of the two kinds of attachment. And the character of the remedies is consistent with this distinction; for the absconding debtor is treated as though he had committed an act of bankruptcy, and the domestic attachment sequesters his goods for the benefit of all his creditors; whereas the non-resident debtor is treated as having merely broken his contract, and his goods are attached to enforce his appearance.

This was clearly a case, not of a non-resident and absent, but of a resident and absconding debtor; and therefore it was right to dissolve the foreign attachment. His absconding is one of the very acts that give the right to the domestic attachment. He was still a resident, within the meaning of the law, if the act of absconding was the only breach of his resident character; and up to that time no intention of changing his residence appears. It makes no difference that during some time before his absconding he was not within the reach of process, because of his absence in performing a job of work. This was no disruption of his resident relation. It often happens that the ordinary process of the law is delayed by the temporary and innocent absence of resident debtors; but such absence does not subject them to the extraordinary remedy by attachment.

Judgment affirmed.