## Raymond, Appellant, *v.* Leishman.

*Foreign attachment—Residence—Domicil—Ambassador to foreign country—Act of June 13, 1836, P. L. 568—Act of March 30, 1905, P. L. 76.*

1. The words "residence" and "domicil" are not convertible terms and the latter is of more extensive signification. Domicil

is the place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. It is acquired by residence with the intention of remaining in the locality. A person may have his domicil in one state and be engaged in business in another and thereby acquire a temporary residence in the latter. A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of residence.

2. The word "residence" is a word whose statutory meaning depends upon the context and the purpose of the statute, which may as used in one statute be fulfilled by mere business residence, and in another require domicil in the strictest and most technical sense. In ascertaining the meaning of the word "residence" in a particular statute the legislative purpose as well as the context must be kept in view.

3. Foreign attachment is the equivalent of a summons for commencement of a personal action. It is a process by which to commence a personal action and to compel an appearance. The foundation for the writ is that the defendant is beyond the reach of process and his property within it. The purpose of the statute is to compel the constructive presence in court of the defendant who by reason of his absence from its jurisdiction without a dwelling place therein cannot be served with the summons. In construing the statute authorizing the issuance of the writ, its object should be kept in view so as to accomplish its intended purpose.

4. The words "not residing within the Commonwealth" as used in the Act of June 13, 1836, P. L. 568, as amended by the Act of March 30, 1905, P. L. 76, providing for the issuance of writs of foreign attachment are not the equivalent of and do not mean "not domiciled within the Commonwealth."

5. Jurisdiction conferred by the foreign attachment statute does not compel the debtor to acquire a domicil or residence in another state. Nonresidence in this State, and not residence in another state, is the test of the jurisdiction of the court to issue the writ. Actual and not constructive or legal residence or domicil defeats the writ. A casual or temporary sojourn or transient journey beyond the State will not confer jurisdiction, but if the debtor's absence is so protracted that he cannot be reached by the ordinary process of the court he is "not residing within the Commonwealth" within the meaning of the statute and the creditor is entitled to the writ.

6. The rule that foreign attachment lies against a nonresident whose domicil is within the State applies to an ambassador residing at a foreign court.

Argued October 24, 1913. Appeal, No. 145, Oct. T., 1913, by plaintiffs, from judgment of C. P. Allegheny Co., April T., 1913, No. 1238, dissolving attachment in case of Harry Raymond, George M. Pynchon, Charles M. Eaton, and Clarence L. Graff, partners trading as Raymond, Pynchon & Company, v. John G. A. Leishman, and Union Trust Company, Union Trust Company, Trustee, and Mellon National Bank, Garnishees. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Reversed.

Action of foreign attachment and assumpsit. Before Macfarlane, J.

The opinion of the Supreme Court states the case.

A rule was entered to show cause why the writ of attachment should not be quashed and the attachment be dissolved, which rule was made absolute. Plaintiffs appealed.

*Error assigned,* inter alia, was in directing that the attachment be dissolved.

*A. Leo Weil,* with him *Charles M. Thorp, S. Leo Ruslander* and *Hays, Hershfield & Wolf,* for appellants.

*Samuel McClay,* with him *D. A. Reed,* and *Reed, Smith, Shaw and Beal,* for appellee.

Opinion by Mr. Justice Mestrezat, January 5, 1914:

The plaintiffs are engaged in business as bankers and brokers in the cities of New York, Paris and London. They brought this action of foreign attachment in assumpsit against John G. A. Leishman to recover $70,-010.95 which they alleged to be a balance due them on account of the purchase and sale for him in the City of London, in the latter part of the year 1912, of certain stocks, bonds and securities. The defendant caused an appearance de bene esse to be entered, and on March 15,

1913, presented a petition to the court below averring that he is a citizen and resident of the State of Pennsylvania and for many years has been and still is a resident of the City of Pittsburgh; that he never abandoned his residence in the said state nor adopted a permanent residence in any other place; that he is at the present time the Ambassador of the United States of America to the Empire of Germany and is temporarily residing in the City of Berlin; that he had been advised by counsel that the writ of foreign attachment cannot lawfully be issued and maintained against a resident of the State of Pennsylvania, and prayed that the writ be quashed and the attachment be dissolved. A rule was issued to show cause why the prayer of the petition should not be granted. The plaintiffs filed an answer to the petition and rule in which they denied the several allegations of the petition, and averred that the defendant was at the time the writ issued and for a long time prior thereto, and has been since, a nonresident of the state.

It appears that at the time the writ was issued and for several years prior thereto Mr. Leishman had his domicil in the City of Pittsburgh, this State, but for twelve years before the writ issued he had been continuously absent from the State in the diplomatic service of the United States as minister and then as ambassador to different foreign countries, and was the Ambassador to the Empire of Germany and as such was residing in the City of Berlin when the action was brought.

The learned court below made the rule absolute and dissolved the attachment, and the plaintiffs have taken this appeal.

The question in the case is whether the defendant was a "person not residing within this Commonwealth" at the time the writ issued within the meaning of the Act of June 13, 1836, P. L. 568, as amended by the Act of March 30, 1905, P. L. 76, which provides as follows: "A writ of foreign attachment, in the form aforesaid, may

be issued against the real or personal estate of any person not residing within this Commonwealth, and not being within the county in which such writ shall issue at the time of the issuing thereof, in all actions ex contractu and in actions ex delicto for a tort committed within this Commonwealth."

The learned court below held that in contemplation of the act, "residence" is synonymous with "domicil," and that as the defendant had his domicil in this State, the writ would not lie against him. We do not think this conclusion is sustained either by reason or by the weight of authority. "Residence," is often used to express different meanings, according to the subject matter: Long v. Ryan, 71 Va. (30 Gratt.) 718. It may be said to be the dwelling place of a person and may be his permanent or temporary abode. It may mean the domicil of the person or his temporary presence in the locality. Domicil has been well defined to be the place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. It is acquired by residence with the intention of remaining in the locality. A person may have his domicil in one state and be engaged in business in another and thereby acquire a temporary residence in the latter. He retains his former domicil until he acquires another, that is, until he removes to another locality with the intention of making it his permanent abode. A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of residence. His place of residence may be, and most generally is, his place of domicil, but it obviously is not by any means necessarily so, for no length of residence without the intention of remaining will constitute domicil: Stout v. Leonard, 37 N. J. L. 492, 495. It is clear that "residence" and "domicil" are not convertible terms, and that the latter is of more extensive signification. While these principles are well settled,

it is also true that as used in many statutes, "domicil" and "residence" have been held to be equivalent terms. The courts have so construed statutes relating to the qualification of voters, to homesteads, to taxation, to the statute of limitations, to succession, guardianship, and administration, and in those prescribing the jurisdictional prerequisites to the maintenance of actions for divorce or separation: 14 Cyc. 835. It is, therefore, apparent, and the courts have held that "residence" is a word whose statutory meaning depends upon the context and the purpose of the statute, which may as used in one statute be fulfilled by mere business residence, and in another require domicil in the strictest and most technical sense: 34 Cyc. 1647. In ascertaining the meaning of the word "residence" in a particular statute the legislative purpose as well as the context must be kept in view.

Foreign attachment under our statute is the equivalent of a summons for commencement of a personal action: Megee v. Beirne, 39 Pa. 50, 62. It is a process by which to commence a personal action and compel an appearance: Albany City Ins. Co. v. Whitney, 70 Pa. 248. The foundation for the writ is that the defendant is beyond the reach of process and his property within it: Pennsylvania R. R. Co. v. Pennock, 51 Pa. 244. The purpose of the statute is to compel the constructive presence in court of the defendant who by reason of his absence from its jurisdiction without a dwelling place therein cannot be served with a summons. The law regards it the duty of a debtor to answer the demand of his creditors and permit his indebtedness to be litigated when it is due, and if he is beyond the usual process of the court, they are remediless unless they may invoke the remedy to compel his appearance by seizure of his property. In construing the statute authorizing the issuance of the writ, its object should be kept in view so as to accomplish the intended purpose. If we hold with the defendant that "not residing within the Common-

wealth" is the equivalent of and means "not domiciled within the Commonwealth," the purpose of the statute in most instances will be defeated. A debtor may absent himself from the jurisdiction of the court for years on business or pleasure, and still retain his domicil at his former residence. In the meantime the creditor has been seriously injured financially because he cannot enforce payment of his claim against his debtor. It is no answer to say that he may follow his debtor into the jurisdiction of his residence. No reasonable construction of our statute will require a creditor to leave the jurisdiction of his debtor's domicil and pursue him into another state, across the continent, or into a foreign country (if the debtor is there subject to the process of the courts) to compel him to litigate the claim. It is no hardship for a debtor to answer the claim of his creditor in a jurisdiction in which he transacts business by purchasing and holding property; on the other hand, it would be a great hardship and often a denial of justice to require the creditor to follow his debtor into the jurisdiction in which he may reside indefinitely for pleasure or business.

In construing the statute, it should be observed that the jurisdiction conferred by it does not compel the debtor to acquire a domicil or residence in another state. He may do so, but it is not a prerequisite to the issuance of the writ. Nonresidence in this State, and not residence in another state, is the test of the jurisdiction of the court to issue the writ. Actual and not constructive or legal residence or domicil defeats the writ. A casual or temporary sojourn or transient journey beyond the state will not confer jurisdiction, but if the debtor's absence is so protracted that he cannot be reached by the ordinary process of the court he is "not residing within the Commonwealth," within the meaning of the statute and the creditor is entitled to the writ. As was well said by Chancellor RUNYON, delivering the opinion of the Court of Errors and Appeals of New Jersey in Stout

v. Leonard, 37 N. J. L. 492, 496: "In determining whether his debtor is within the provision of the statute, the creditor and the courts must necessarily be guided by the ordinary and obvious indicia of residence or the absence of such indications, and the purposes of the act are not to be thwarted by the secret mental resolves or intentions of the debtor on the subject of his domicil."

The very decided weight of authority is that in attachment statutes "domicil" and "residence" are not convertible terms, and that such statutes contemplate actual residence without regard to the domicil of the debtor. The appellate courts of the several states which have construed statutes similar to the Pennsylvania statute have almost unanimously held that "residence" and "domicil" are not synonymous terms within the meaning of such statutes, that a debtor may have his residence in one state while his domicil is in another, and that a debtor, although his legal domicil is in a state, may reside or remain out of it for so long a time, and under such circumstances, as to acquire, so to speak, an actual nonresidence, within the meaning of the attachment statute. A few of the numerous authorities may be cited. In Garden v. Garden, 107 N. C. 214, Mr. Justice SHEPHERD delivering the opinion says: "The prominent idea is, that the debtor must be a nonresident of this state, where the attachment is sued out; not that he must be a resident elsewhere.......The essential charge is, that he is not residing or living in the state, that is, he has no abode or home within it where process may be served so as effectually to reach him. In other words, his property is attachable if his residence is not such as to subject him personally to the jurisdiction of the court, and place him upon equality with other residents in this respect." In Lawson v. Adlard, 46 Minn. 243, the court speaking by Mr. Justice COLLINS, says: "It is apparent, from an examination of the most approved authorities, that, in construing statutes relating to attachment of the property of nonresidents, a

wide distinction has been recognized between an actual residence and a legal residence, the latter being generally deemed the domicil, and not the residence, contemplated; the word 'residence' being construed in its popular sense, as the act of abiding or dwelling in a place for some continuance of time." In Thomson v. Ogden, 23 Ohio Cir. Ct. 185, VOORHEES, J., delivering the opinion says: "A generally accepted definition of 'residence,' when the term is used with reference to the qualification of voters, is synonymous with 'domicile.' But when applied to attachment laws, 'domicile' and 'residence' are not convertible terms, for domicil may be in one place and residence for the time being, in another. 1 Shinn on Attachment, sec. 90, says: The term 'nonresident' in the attachment law, therefore, means, one who has an abode in another state." In Stickney v. Chapman, 115 Ga. 759, it is said by the court: "Evidently the theory of the defendant was, that if he was legally domiciled in Floyd County, then without regard to the fact that for the purposes of business he continually remained out of the state, he was a resident of the state; and further, that the fact that he had acquired no domicil elsewhere determined the question of his residence. This contention, when applied to the construction of laws relating to attachments of the property of nonresident debtors is not sound." In Weitkamp v. Loehr, 53 N. Y. Superior Ct. 79, 82, it said by O'GORMAN, J.: "Generally speaking, domicile and residence mean the same thing. They have, however, at least when used in reference to attachment under the code, different and distinct meanings. Residence, combined with intention to remain, constitutes domicile.......Residence, in attachment laws, generally implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an intent existing all the while, to return to the true domicile........In my opinion, actual cessation to dwell within the state for an uncertain period, without definite intention as to any

fixed time of returning, even although a general intention to return at some time in the future may exist, constitutes nonresidence, and warrants an issue of an attachment."

We have examined our cases cited by appellee to sustain his position and we think the facts distinguish them from the present case. In Fuller v. Bryan, 20 Pa. 144, the defendant was temporarily absent from the State for business purposes with the intention of returning, and his family continued to reside here. In Pfoutz v. Comford, 36 Pa. 420, the defendant left his family in this State to go west to look for a residence, intending to return in four or five weeks. After he left, the attachment was served. He returned within the time expected, remained a short time and then removed with his family to a western state. This court held that he "remained a resident of this State until he left the State with his family on his way to his new home elsewhere." In Reed's App., 71 Pa. 378, the question whether defendant was a nonresident was left to the jury who found that he was, and in disposing of the case here, we assumed the finding of the jury to be correct.

We think the rule that foreign attachment lies against a nonresident whose domicil is within the state applies to an ambassador residing at a foreign court. It is true he acquires no new domicil in the country to which he is accredited, but he actually resides there and during such residence he is not amenable to the process of the courts of that country. This is necessary for the protection of his dignity as ambassador of his country and to prevent interference with the proper discharge of his official duties. During his residence abroad he is immune from both civil and criminal process in the courts of the country to which he is sent, and if he cannot be sued in the courts of his domicil or where his property may be found, he is beyond the reach of the process of any court to which his creditors may apply to enforce their claims. The consequences of such a doctrine are a sufficient refu-

tation of its soundness. A citizen accredited as ambassador to another country may not be sued in the courts of that country, and immunity in the courts of his domicil ought not to be extended so as to delay creditors in the enforcement of their claims until the expiration of a long official term. In the case in hand, the defendant was absent and beyond the reach of the process of the courts of this State for twelve years, which can hardly be considered "the temporary and innocent absence of a resident debtor" referred to in Fuller v. Bryan, 20 Pa. 144.

The purpose of foreign attachment being to reach an absent debtor who is beyond the ordinary process of the court, there can be no substantial or controlling reason why an ambassador residing at a foreign court should not be subject to it like any other debtor who by his absence becomes amenable to the writ. He is simply submitting himself to the laws of his country for the adjudication of his rights which every citizen is required to do. It may seem inconvenient to him to respond to the writ, but every debtor whose time is occupied with important official duties or who has large business interests occupying his attention at home or abroad meets with like inconvenience. If, as in this instance, an ambassador has the time to leave the court at which he resides, and engage in business in another foreign country of such importance as is disclosed here, he certainly has sufficient time to respond to the demands of his creditor in a matter arising out of the same transaction. To hold otherwise would be to permit him to absent himself from his official duties and from the court to which he is accredited and engage in business, and protect him against an indebtedness to his creditor arising out of the same transaction. We think such a position is wholly untenable.

For the reasons stated we are of opinion the defendant was "not residing within this Commonwealth" within the meaning of the statute when the writ was is-

sued, and that the learned court below erred in making the rule absolute and dissolving the attachment.

The judgment is reversed and the attachment reinstated with a procedendo.