## Jones' Case.

Argued January 20, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charlotte F. Jones,* in propria persona, for petitioner.

OPINION BY MR. JUSTICE STERN, March 24, 1941:

Three times—in 1936, 1939 and 1940—has appellant, Charlotte F. Jones, petitioned the Court of Common Pleas of Montgomery County to issue a commission to inquire into the lunacy of her brother, Elliot P. Jones, and each time the court has denied her application. The present appeal is from the last of these refusals. While the court gave various reasons for its action, we shall here concern ourselves only with one, that of lack of jurisdiction.

The Act of June 13, 1836, P. L. 592, section 2, cl. II, provides that if an alleged lunatic has no residence within the commonwealth, a commission "may be issued by the court of the county in which he may be, and shall be executed therein." Appellant seeks to bring her application under this provision of the act. In September, 1921, her brother was placed in the State Hospital for the Insane at Norristown on the certificate of two physicians, and has been confined there ever since; she alleges he had no residence within the commonwealth at that time. It appears, however, that in March, 1923, on appellant's own petition, the Court of Common Pleas of Chester County adjudged Jones to be a weak-minded person and appointed a guardian for his estate under the Act of May 28, 1907, P. L. 292. That court had jurisdiction only if Jones then "resided" in the county, and appellant must have represented such to be the fact, either expressly or by necessary inference because of the filing of her petition there. Having obtained the appointment of a guardian in Chester County upon that representation, she cannot now be heard to assert that her brother did not reside within the State at the time of his admission to the Hospital a year and a half before, since he could not have established a new residence while insane: *In the Matter of Grant Edmundson,* 109 Pa. Superior Ct. 495, 497, 167 A. 502, 503. The fact of his residence in Chester County, which furnished the necessary basis of the jurisdiction of the court of that county to appoint a guardian, cannot be collaterally attacked: *Mintzer's Estate,* 163 Pa. 484, 486, 30 A. 153, 154; *Kipp's Estate,* 286 Pa. 90, 93, 132 A. 822, 823; *Davis v. Davis,* 305 U. S. 32, 40; *Stoll v. Gottlieb,* 305 U. S. 165, 171, 172.

Assuming, therefore, as we must for purposes of this proceeding, that Jones did have a residence within the commonwealth, namely in Chester County, when he became an inmate of the State Hospital, it is only in that county that application for the issuance of a com-

mission in lunacy may be made, because section 2, cl. I, of the Act of 1836 provides that if the alleged lunatic "shall reside within the commonwealth, such commission shall be issued by the court of the county in which he shall reside, and shall be executed therein." It is true that there is a proviso that, "if an alleged lunatic shall be under restraint, in any place within this commonwealth, out of the county of his residence, and it shall be made to appear, to the satisfaction of the court of such county, that such person cannot conveniently be removed to the place of his residence, such commission may be executed in the county where such person may be so restrained." It is to be noted, however, that this does not provide for any change in the county where the commission is to be *issued* but only where it is to be *executed*, its obvious purpose being to allow the commissioners to sit and take testimony and examine the alleged lunatic in the county where he is under restraint if he cannot conveniently be brought for that purpose to the county of his residence where the commission issued. Indeed, the proviso would have been wholly unnecessary if an alleged lunatic were to be considered as "residing" in the county in which he is held under restraint. "Reside" and "residence" are terms whose statutory meaning depends upon the context and purpose of the statute in which they occur: *Raymond v. Leishman*, 243 Pa. 64, 69, 89 A. 791, 793; see also *In the Matter of Grant Edmundson*, 109 Pa. Superior Ct. 495, 167 A. 502. It is natural that the legislature should have intended that a commission in lunacy ought to issue only in the county where the alleged lunatic has his normal place of abode and where, therefore, his relatives and friends who are apt to be interested in the proceedings would likely be found.

The Act of July 15, 1897, P. L. 301, has no application to the present situation. It provides that when an alleged lunatic "is an inmate of any soldiers' and sailors' home, almshouse, home for the friendless, or

other charitable institution in this Commonwealth," it shall be lawful for the officer in charge of the institution to apply for a commission in lunacy to the court of common pleas of the county in which the institution is located. According to the principle of ejusdem generis a State Hospital does not come within the class of institutions enumerated in this act. Moreover, according to its terms, it is only the officer in charge of the institution who may apply for a commission.

Holding, therefore, as we do, that the Court of Common Pleas of Montgomery County was without jurisdiction to issue the commission in lunacy sought by appellant, all other questions become academic, although it may be added that by appellant's failure to appeal from the dismissal of her previous petitions the subject-matter of her present application became res adjudicata. She argues that, whereas she filed this petition as a creditor of her brother, she filed the others as his sister, but she cannot obtain a readjudication merely by appearing in different capacities or relationships to the alleged lunatic: *Stewart v. Montgomery*, 23 Pa. 410, 412; *Commonwealth v. Cochran*, 146 Pa. 223, 226, 23 A. 203.

If, as appellant states, her object in seeking the appointment of a committee for her brother is to enable her to obtain reimbursement for expenditures alleged to have been made for his use and benefit, there would seem to be no reason why she should not present her claim to the guardian appointed by the Chester County court. Even if, as she seems to fear, the validity of that appointment was dubious, it would at worst be voidable, not void, and can safely be recognized by her as valid unless and until revoked: *Barclay-Westmoreland Trust Co. v. Dollar Savings Bank*, 338 Pa. 421, 12 A. 2d 586.

The order of the court below is affirmed.