## Commonwealth v. Rowley

*Frank A. Orban, Jr.,* for Commonwealth.

*Frank S. Lucente,* for defendant.

LANSBERRY, P. J., March 6, 1958.—Elwood M. Rowley appealed from a summary conviction under section 316 of The Game Law of June 3, 1937, P. L. 1225, 34 PS §1311.316, in which he was charged with the offense of hunting on Pennsylvania lands without having ob

tained a nonresident hunter's license. The appeal was heard de novo after which arguments of both counsel were heard.

Section 316 of The Game Law provides in substance that it shall be unlawful to hunt wild game in Pennsylvania without obtaining either a resident or nonresident hunter's license. There are several exceptions to this requirement, one of the exceptions being that citizens of the United States, residing within this Commonwealth, regularly and continuously engaged in cultivating the soil for general farm crop purposes as more fully set forth in section 317, 34 PS §1311.317, shall not be required to obtain a hunter's license.

Counsel for defendant advances three bases in support of this appeal: (1) That defendant at the time of the alleged violation was a resident of Pennsylvania regularly and continuously engaged in the cultivation of the soil for general farm crop purposes; (2) that defendant was not engaged in hunting at the time of the alleged offense; and (3) that defendant, being the owner of a farm in Pennsylvania, has a constitutional right and privilege to hunt on his own land without a license.

The first defense interposed, namely that this defendant is a resident of Pennsylvania under The Game Law, is based on section 317 of The Game Law which, as now in force, is as follows:

"1311.317 Legal hunting or trapping by residents without license:

"Unless the right to procure a license or to hunt or trap anywhere within the Commonwealth has been denied under the provisions of this act, any citizen of the United States residing within this Commonwealth who is regularly and continuously engaged in cultivating the soil for general crop purposes, commercial truck growing, commercial orchards or commercial

nurseries, as either the owner or lessee or tenant of said lands, or as a member of the family or household or regularly hired help of such owner or lessee or tenant, shall be eligible to hunt and trap on said lands, including the woodlands connected therewith and operated as a part thereof, without a resident hunter's license, an archery license or an archery preserve permit, if such owner, lessee, tenant, member of the family or household or hired help resides in a dwelling situated upon the property so being cultivated and shall have continuously resided thereon and assisted in the cultivation of said land for a period of sixty or more days prior to the general open hunting or trapping season.

"Any of the persons enumerated above who shall be eligible to hunt or trap on certain lands without securing a resident hunter's license, an archery license or an archery preserve permit, also may, by and with the written consent of the owner or lessee thereof, hunt or trap upon any lands other than those publicly-owned which lie immediately adjacent and are connected with the lands upon which such persons may lawfully hunt or trap without securing a license or permit": As amended, June 14, 1957, P. L. 307.

The foregoing section of the law presents the specific issue whether or not Elwood M. Rowley was, at the time of the alleged offense, a Pennsylvania resident within the contemplation of the act. The answer to the issue is in part dependent upon the correct construction of the word "residing" as used in the act.

From the testimony the following evidentiary facts with reference to defendant's residing or living on the farm are disclosed. For a number of years, Elwood M. Rowley resided in a property owned by him with address at R. F. D. 4, Cumberland, Md., where his wife and eight children resided with him. In June of 1956, defendant purchased a farm containing 204 acres in

Greenville Township, Somerset County, and located about nine miles distant from his Maryland home. Within several weeks after purchasing this Pennsylvania farm, he moved a considerable amount of household furniture thereto and with his family lived on that farm throughout the remainder of the summer of 1956. During the winter months of 1956-57, the family lived at the Maryland home where the children of school age attended the local school. During those winter months also, defendant and his family lived almost every weekend, weather permitting, at the farm and frequently during the week they or defendant spent some time there. Similarly, during the summer of 1957 the family lived exclusively at the farm and after the school term opened in the fall of 1957, the family lived in the Maryland home but also lived some weekends at the farm. Defendant's regular employment was in Maryland near his home. He possessed a Maryland chauffeur's license containing the R. F. D. 4, Cumberland address, and he also possessed a Pennsylvania driver's license. Most of his mail was received by him at his Maryland home and some mail was addressed to and received by him at his Meyersdale, Pa., R. F. D. address, that being the post office address assigned for the farm. The farm telephone, like that in his Maryland home, was listed in his name. The farm property was assessed for tax purposes in his name, but no assessment for personal or per capita taxes was made by either the township, school district or county authorities in Pennsylvania.

Mr. Rowley testified that it was his intention, as soon as circumstances permitted, to live exclusively on the Pennsylvania farm, and that, for all purposes, his intention and that of his family was to become Pennsylvania residents. He further testified that he purchased or dealt for some farm machinery in Meyersdale in which he was corroborated and that he purchased locally other items for the farm. With reference to the

farm itself, the testimony is that of the 204 acres therein, 168 acres are in cultivation and the remainder in pasture, woodland and some acreage surrounding the buildings which include two dwelling houses, a barn, poultry house and the customary farm buildings. One of the dwellings is occupied by the hired tenant farmer and the larger dwelling occupied by defendant and his family, which dwelling has been furnished and used for living purposes by him and his family since the purchase of the property as indicated. Mr. Rowley further testified that since purchasing the farm he personally worked on the farm helping to cultivate the soil, harvest the crops, feed and attend the livestock and engaged in all tasks and chores common to general farming and that he himself managed the farm operations.

The nice distinctions and precise use of the terms "domicile" and "residence" have not always been observed in either legislative enactments, judicial opinions and legal documents. However, domicile and residence are not convertible terms; domicile is a matter of intention, residence is a physical fact: Robinson v. Robinson, 362 Pa. 554, 559; DuPuy Estate, 373 Pa. 423, 427; Raymond v. Leishman, 243 Pa. 64; Alburger v. Alburger, 138 Pa. Superior Ct. 339; Rosenberg v. Rosenberg, 163 Pa. Superior Ct. 138; A. L. I. Restatement of the Law of Conflict of Laws §9, particularly the Pennsylvania annotations indicating the various constructions placed on both words in various situations such as taxation statutes, divorce proceedings, attachment and insolvency proceedings and various other statutory enactments.

In the leading case of Raymond v. Leishman, 243 Pa. 64, 68, supra, Mr. Justice Mestrezat pointed out some of the distinctions and characteristics of the two terms:

"The learned court below held that in contemplation of the act, 'residence' is synonymous with 'domicil,' and that as the defendant had his domicil in this State, the writ would not lie against him. We do not think this conclusion is sustained either by reason or by the weight of authority. 'Residence,' is often used to express different meanings, according to the subject matter: Long v. Ryan, 71 Va. (30 Gratt.) 718. It may be said to be the dwelling place of a person and may be his permanent or temporary abode. It may mean the domicil of the person or his temporary presence in the locality. Domicil has been well defined to be the place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. It is acquired by residence with the intention of remaining in the locality. A person may have his domicil in one state and be engaged in business in another and thereby acquire a temporary residence in the latter. He retains his former domicil until he acquires another, that is, until he removes to another locality with the intention of making it his permanent abode. A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of residence. His place of residence may be, and most generally is, his place of domicil, but it obviously is not by any means necessarily so, for no length of residence without the intention of remaining will constitute domicil: Stout v. Leonard 37 N. J. L. 492, 495. It is clear that 'residence' and 'domicil' are not convertible terms, and that the latter is of more extensive signification."

In construing and applying the terms "domicile" and "residence" when used in legislative enactments, attention must be given to the context in which those terms are used and as well, the objects and purposes of

the legislation. Hence the use of the term and the construction placed upon that use must be consistent with the purpose and object intended or sought by the context. In Raymond v. Leishman, supra, the court further said, at page 69:

"It is, therefore, apparent, and the courts have held that 'residence' is a word whose statutory meaning depends upon the context and the purpose of the statute, which may as used in one statute be fulfilled by mere business residence, and in another require domicil in the strictest and most technical sense: 34 Cyc. 1647. In ascertaining the meaning of the word 'residence' in a particular statute the legislative purpose as well as the context must be kept in view."

To this authority we may also add Robinson v. Robinson, 362 Pa. 554, 558, and Jones' Case, 341 Pa. 329, 332.

From a strict legal viewpoint, it is manifest that a person can have but one domicile at one and the same time, but it is equally manifest he may have more than one residence at one and the same time depending upon the legislative intent in using the word residence: Raymond v. Leishman, supra, wherein it is said, as above noted: "A man can have but one domicil for one and the same purpose at any one time, although he may have numerous places of residence."

In Messick v. Southern Pennsylvania Bus Co., 59 F. Supp. 799, it was said: "A man may have several residences and can change his residence at will; but domicile, once established, so remains until a new domicile is gained."

This matter of residence, domicile and habitation was considered by our Supreme Court in 1954 in the Lesker Case, 377 Pa. 411, wherein Mr. Justice Musmanno said, at page 418:

"It seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. Their meanings seem bound to escape their lexicographical boundaries and mingle with the others since a person's place of *residence* may be identical with his *domicile*, and *habitation* is always a component part of *residence* and *domicile*. However, in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return. A person's civil status is determined by his domicile. Thus, a business man may have his family home in the suburbs of a city where he lives with his wife and children. No matter where he travels nor how long he remains away he always returns to this abode. This is his domicile. For business reasons he may have a residence in the city, even living there for many months of the year. This residence can never become the basis for voting or for candidacy for office. If travelling, he may stay at a hotel, boarding or rooming house. This would be his habitation and, regardless of expression of intention, could never become his legal domicile."

From the foregoing authorities it is clear that the terms "residence" and "domicile" are not convertible terms, even though they are sometimes loosely and interchangeably used; that a person, under certain circumstances, may have more than one residence and that the construction placed upon the term "residence" when used in a legislative enactment must be construed with relation to the context in which it was used including the object and purpose of the legislation under consideration.

Applying the foregoing principles to the facts in this case, we are of opinion that the domicile of Elwood

M. Rowley at the time of the alleged offense was R. F. D. 4, Cumberland, Md., but that he had established in Greenville Township, Somerset County, Pa., a residence within the meaning of section 317 of The Game Law and that in that residence he was regularly and continuously engaged in cultivating the soil for general farm crop purposes for a period of more than 60 days prior to the general open hunting or trapping season of 1957. Accordingly, we conclude that defendant was not required to obtain a hunting license under the circumstances.

We think the conclusion we have reached on this branch of the case is supported by sound logic and reason. The legislative purpose and object of section 317 was not to disqualify or prevent owners who are also tillers of their soil from hunting on their own farm and woodlands. Moreover, had the legislature intended to prevent such owners of land as here described from thus having the benefit of their land, the term "domicile" would more appropriately have been used and that term having a more precise and definite construction in law, little if any doubt would have arisen in the circumstances of this case.

In view of the conclusion we have reached on the basis of the first defense advanced we need not and do not determine the merit of the other defenses interposed. However, with reference to the second defense advanced, we may suggest the guilt of defendant is not beyond a reasonable doubt in view of section 318 of The Game Law, 34 PS §1331.318, as interpreted in Commonwealth v. Davenport, 77 D. & C. 416, and with reference to the third defense advanced, the decision in Commonwealth v. Henckel, 4 D. & C. 337, would appear to support that position.

On the basis of the foregoing opinion we enter the following

*Order*

Now, March 6, 1958, the appeal from the summary conviction against Elwood M. Rowley above captioned is sustained, defendant is found not guilty, the prosecution is dismissed, the fine and costs paid to the justice of the peace is ordered remitted and the record costs placed upon the County of Somerset.