Fossleitner Appeal.
Huck Appeal.

326

Argued March 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, ROBERTS and POMEROY, JJ.

reargument refused October 28, 1969.

*William M. Hoffman,* with him *Campbell, Thomas & Burke,* for appellants.

*Alfred C. Maiello,* with him *John B. Nicklas, Jr.,* and *McCrady & Nicklas,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 27, 1969:

The facts in this case are both unusual and complicated. The *maternal grandmother* of two minor children, Rudolf Harry Huck, now eleven years old, and his sister, Mary Jane Huck, age nine, took this appeal from the final decree of the Orphans' Court of *Allegheny County* dated *October 14, 1968.* In and by that decree, the Orphans' Court appointed Harry W. Huck, who is the *paternal uncle* of the minor children (and the appellee in this case), guardian of the persons of the minors, thereby taking the children from their grandmother with whom they had been living in Aus-

tria almost since birth *and gave them to a total stranger* to live in a (to them) foreign Country and in a State other than Pennsylvania.

The father of the children, Herbert E. Huck, was born in Pittsburgh on November 23, 1927. He remained a resident of Allegheny County until July 2, 1945, when he enlisted in the United States Army. At the termination of his service, he returned to Pittsburgh and lived in that City as a *lodger* with a married couple until March 29, 1952, when he re-enlisted in the Army. So far as the record shows, he had never resided in Pittsburgh after that date. On January 31, 1957, he married Maria Anna Fossleitner at Weyer, Austria. Mrs. Huck became a naturalized citizen of the United States on February 12, 1960.

On or about June 29, 1962, Herbert E. Huck, while in the military service and stationed at Nuremberg, Germany, killed his wife with a knife. Thereafter, the United States military authorities took the minor children into custody, contacted Berta Fossleitner, their maternal grandmother, at her home in Austria, and had her come to West Germany where the Army delivered into her custody the Hucks' two minor children. *Ever since that time, the children have resided with their grandmother in Austria.* Their father, Herbert E. Huck, is mentally ill and incompetent, and since June 29, 1962, has been in the custody of the United States military authorities. He is presently institutionalized in a United States Government Hospital, St. Elizabeth's Hospital, in Washington, D. C.

In October of 1962—three months after the murder —the present appellee, who resided then and still resides at 4508 Woodlark Place, *Rockville, Maryland,* began proceedings in the District Court of Steyr, Austria, to obtain, with the consent of his brother,* custody of

---

* Herbert E. Huck, who was, we repeat, a murderer and also an incompetent.

these children. Shortly thereafter, Berta Fossleitner, the maternal grandmother of the children, filed an action in the County Court of Weyer, Austria, seeking the permanent custody of the children. That Court entered an interlocutory order granting custody of the children to their grandmother, subject to a determination of the American law of the domicile of the children, with the further provision that if the Court of the domicile of the children failed to assume jurisdiction of the children and of their custody, the Court would enter a permanent order granting custody to the children's grandmother.

On June 12, 1963, appellee presented and filed a petition in the Orphans' Court of Allegheny County, Pennsylvania, praying that he be appointed guardian of the persons of the minors, Rudolf Harry Huck and Mary Jane Huck. On the same date, the Orphans' Court entered an order granting the prayer of appellee's petition. Neither the children nor their grandmother, Berta Fossleitner, were made parties to this proceeding, nor does it appear that any notice whatsoever was given to them concerning the matter. The Orphans' Court apparently entered said order without even holding a hearing.

Upon this appellee's presentation to the Circuit Court at Steyr, Austria, of the order of the Allegheny County Court appointing him guardian of the persons of the children, that Court awarded custody of the children to the appellee. This order or judgment was reversed on appeal by the Supreme Court of Vienna, which held that the aforesaid order of the Orphans' Court of Allegheny County, Pennsylvania, dated June 12, 1963, did not bind Berta Fossleitner, since she was not a party to the proceeding, and had no notice of the proceeding and no chance to raise her objections to a change of custody.

On *July 5, 1967,* appellee filed in the Orphans' Court of Allegheny County a new petition for the custody of these minors. On the same day, the Orphans' Court entered an order directing that a citation issue, directed to Berta Fossleitner, to show cause why appellee should not be appointed guardian of the persons of said minor children. The order fixed the time and place for a hearing on the petition, and also provided that at least ten days' written notice of the hearing should be given to Berta Fossleitner by serving her personally at Hollensteiner Str. 217, Weyer, Austria, by handing to her the citation and a copy of the petition and order of the Court dated July 5, 1967. A copy of the citation together with a copy of the petition and the aforesaid order of the Court were served personally upon Berta Fossleitner on July 26, 1967, in Weyer, Austria, by Dr. Friedrich Grohs, the Austrian attorney who represented appellee in the proceedings before the Austrian Courts.

Appellee admitted in his petition that both of the children involved in the present custody proceedings are nonresidents of the Commonwealth of Pennsylvania, that they reside at the home of their maternal grandmother in Weyer, Austria, and that they have resided there (almost) since the murder of their mother in 1962. However, appellee alleged in his petition that the Orphans' Court of Allegheny County, Pennsylvania, had jurisdiction because the children are *technically domiciled* in Allegheny County, Pennsylvania. This averment of jurisdiction was based on the presumption that minor children have the *domicile of their father,* which was alleged to be Allegheny County because the father was a lodger therein prior to his last enlistment in the military service in 1952.

Berta Fossleitner, the maternal grandmother of the minors, filed preliminary objections to the jurisdiction

of the Allegheny County Orphans' Court. The preliminary objections were dismissed and Berta Fossleitner was directed to answer within fifteen days. She did not file an answer. Nevertheless, the case was heard in the Allegheny County Orphans' Court on September 16, 1968. Thereafter, that Court entered a decree appointing Harry W. Huck guardian of the persons of his nephew and niece, Rudolf Harry Huck and Mary Jane Huck. After the dismissal of exceptions and the entry of a final decree, the grandmother appealed to this Court.

The question of whether a legal and realistic domicile or a bona fide residence (not attained temporarily or by arbitrarily keeping or abducting a child) is the paramount consideration in the determination of jurisdiction, and the law on this point is not well settled. Moreover, the question and application of comity in the determination of jurisdiction is often a "ticklish" one.

In order for the lower Court to exercise jurisdiction, there must be a legally recognized relationship between the State and the persons over whom the State seeks to exercise jurisdiction. A State has power to exercise judicial jurisdiction over an individual who is either a resident or a domiciliary of the State. Restatement 2d, Conflict of Laws, Proposed Official Draft §27. In this case, we must determine whether the minor children have the kind of relationship with the State of Pennsylvania and the County of Allegheny which is legally sufficient to make the exercise of jurisdiction in the Allegheny County Orphans' Court both proper and reasonable. Restatement 2d, Conflict of Laws, Proposed Official Draft §24. It is a *general rule* that a minor cannot acquire a residence or domicile of his own apart from one of his parents: 3 Hunter, Orphans' Court 146, §2(b) ; *McIlhenney Guardian,* 3 Pa. D. & C. 2d 561, 563 (1955) ; 5 Partridge-Remick, Penn-

sylvania Orphans' Court Practice 210, §36.05. Partridge-Remick aptly states: "Section 1011(a) of the Fiduciaries Act of 1949 provides: 'A guardian of the person or of the estate of a minor may be appointed *by the court of the county in which the minor resides.'*

. . .

"It has been held that the jurisdiction to appoint a guardian depends in general on the *residence* of the minor.

. . .

"Where the parents resided in Philadelphia at the time of the father's death in 1909, and the mother continued to reside in Philadelphia until she remarried in 1913, but thereafter lived with her second husband in Montgomery County where the minor was taken and thereafter resided with her mother and stepfather, jurisdiction to appoint a guardian of the minor's estate belonged to the orphans' court of Montgomery County.

"Upon the separation or divorce of the parents, *a child acquires the domicile of the parent with whom he resides* or to whom custody of the child has been given.

"When both parents are dead, the court of the county in which the minor *resided* with his grandparents has jurisdiction."

It is also a *general rule* that a minor has *the same residence* and domicile as the parent with whom he lives. However, if one parent dies or is incompetent, the minor's domicile is that of the surviving parent; or if both parents are dead, or one is dead and the other parent is incompetent or cannot be found, or if the minor is abandoned by both parents and no guardian has been appointed, the child can acquire a resi-

---

\* Italics throughout, ours.

dence and domicile at the home of a grandparent or other person who stands in loco parentis to him *and with whom he lives*: McIlhenney Guardian, 3 Pa. D. & C. 2d, supra. Unless there is some compelling or adequate reason to the contrary, the child's domicile should be in the place or home of the person with whom he lives, especially if that person stands in loco parentis to him, even though that person is not a blood relative: Restatement 2d, Conflict of Laws, Proposed Official Draft §22, comment *i*.

Comment *i* is as follows: "*i*. 'Natural' guardian. If both parents of a child are dead, or if the child is abandoned by both parents or by a surviving parent, and no guardian of the child's person is appointed, the child should acquire a domicil[e] at the home of a grandparent or other person who stands in loco parentis to him *and with whom he lives*. To date, the cases have placed the child's domicil[e], in the circumstances dealt with here, at the home of a grandparent or other close relative. Absent some compelling reason to the contrary, the child's domicil[e] should be in the place to which he is most closely related. The child should therefore have a domicil[e] at the home of the person who stands in loco parentis to him and with whom he lives even though this person is not a blood relative."

The paternal uncle to whom the Orphans' Court of Allegheny County awarded the custody of these minor children lives in Rockville, Maryland, in a split-level, four-bedroom home which is occupied by himself and his wife, three minor children and his mother-in-law.

Under the facts in this case, to give jurisdiction of these young children (aged 9 and 11) to the Orphans' Court of *Allegheny County,* and permit that Court to award custody of the minor children to a *stranger* who lives in an overcrowded home in *Maryland,* would be an improper and unwarranted and unwise stretch of

the law; it would in all likelihood create a grievous offense to comity; and it would undoubtedly result in a gross miscarriage of Justice.

The dissenting Opinion would uproot these 11-year-old and 9-year-old youngsters from their home in Austria, in which they have been living during their young lives (seven years) and bring them to a foreign (to them) Country where they do not know our language or customs, to live with a stranger whom they have never seen. The dissenting Opinion gives three reasons or grounds for such an inhumane position,—"that the schools which the children would attend in Austria provided neither the facilities nor the opportunities that would be available to the children if they lived with appellee [in Rockville, Maryland], and that college training would likely be impossible . . . [and] that in Austria, the children would have a limited choice of occupations in a primarily rural area."

Life on a farm or in a rural district, whether here or in a foreign Country, often brings contentment or happiness far greater than in a turbulent city. Education received in Pittsburgh or even in Rockville, Maryland, is important, and is often an essential step toward employment in business or acquiring wealth, but it does not follow that it brings happiness or even a job, either in Rockville or in Pittsburgh, or in rural Austria.

The next reason or ground upon which the dissenting Judge bases his Opinion is that the wishes of their demented murderer-father should be one of the important considerations for completely changing the lives of these two young children whom the father has not seen for seven years. No words are needed to describe the foolishness of this contention. The appellee, who is seeking from the Orphans' Court of *Allegheny County* custody of these children, lives in Maryland and does

not live and has not lived in Pittsburgh for thirteen years. Where the significant legal connections and relationship with the State (Commonwealth) of Pennsylvania and with the Orphans' Court in Pittsburgh, Pennsylvania, are as scant as they are in this case, then, with respect to jurisdiction and comity, and especially from the standpoint of the welfare and the best interests of the children, it would be unreasonable and improper and unwise to grant jurisdiction *in this case* to the Orphans' Court of Allegheny County.

Decree reversed, each party to pay own costs.

Mr. Justice COHEN concurs in the result.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I cannot join in the opinion of the Chief Justice. However, I do agree with his conclusion that the relationship of the children involved with the Commonwealth of Pennsylvania and particularly with the County of Allegheny is not such as would warrant the Orphans' Court of Allegheny County entertaining jurisdiction in these proceedings. Hence, I concur in the result.

Mr. Justice JONES joins in this opinion.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

The first question for decision here, as both the majority and dissenting opinions agree, is the jurisdiction of the Orphans' Court of Allegheny County to appoint a guardian for minor children who have never been personally present in Pennsylvania and who for seven years have lived with their maternal grandmother in Austria. How this situation developed, and the circumstances of the family, are described in the opinions.

Only if jurisdiction is found is it in order to consider the propriety of its exercise.

The starting point in the jurisdictional determination must be the applicable statute, which is the Fiduciaries Act of 1949, §1011(a), Act of April 18, 1949, P. L. 512, Art. X, §1011(a), 20 P.S. §320.1011(a). It reads as follows: "(a) Resident minor. A guardian of the person or of the estate of a minor may be appointed by the court of the county in which the minor *resides*." (Emphasis added.)[1]

This section is derived from §59(a) of the Fiduciaries Act of 1917, Act of June 7, 1917, P. L. 447, §59(a), 20 P.S. Ch. 3, App. §1021. This section provided that the orphans' court of each county "shall have the care of the persons of minors *resident* within said county . . . and shall have power . . . to appoint guardians for such as are under the age of fourteen . . . Such appointment . . . by the orphans' court of the county in which the minor *resides*, shall have the like effect in every other county in this Commonwealth . . ." (Emphasis added.)

This provision, in turn, was Section 5 of the Act of March 29, 1832, P. L. 190, with certain alterations not here material. That act was based on the Act of March 27, 1713, 1 Sm. L. 81.

It is immediately apparent that the words "resides" and "resident" as used in the Fiduciaries Act of 1949 need definition: do they refer to those minors who are physically present in the county, in the sense of living there either permanently or temporarily, or do they refer to minors who are domiciled in the county irrespective of physical presence, or some combination of the two?

---

[1] Subsection (b) is headed "Nonresident minor." and provides for the appointment of guardian of the estate, but not the person, of such a minor.

It seems strange that with a statutory genealogy of such ancient age, the words in question have never, so far as our research discloses, received interpretation by this Court. We have recognized, however, more than once that "reside" or "resident" may have various meanings, dependent on context and purpose of the legislation. See *Raymond v. Leishman,* 243 Pa. 64, 89 Atl. 791 (1914); Restatement, Conflict of Laws, §30, Comment *e* (1934).[2] Further, we have stated that domicile and residence are not convertible terms. *DuPuy Estate,* 373 Pa. 423, 427, 96 A. 2d 318 (1953).

Neither the majority opinion nor the dissenting opinion adverts to the problem of statutory interpretation here involved; each of them *assumes* that the test of jurisdiction is the domicile of the minor, and proceeds to decide, as a question of common law conflict of laws, whether domicile existed, with opposite answers resulting.

"Resident minor", as used in §1011(a) of the Fiduciaries Act of 1949, may well refer to a domiciled minor, and "resides" may mean "is domiciled", but this should not be decided *sub silentio* or by implication, and I, for one, am not sure it is the correct interpretation. If it is not correct, and "resides" in the sense of some physical presence in, or connection with the county is what is meant, then clearly no jurisdiction existed in this case. If, on the other hand, domicile is indeed the true test under our Act, I am obliged to find it also lacking under the unique facts of this case. I do so, however, on a rationale somewhat different from that of the majority. Suffice it to say that the situation of the minor children in the case at bar is sufficiently similar to that where both parents are dead or

---

[2] Substantially the same observation appears in the Proposed Official Draft of the Restatement (Second) Conflict of Laws, §11, comment k (1967).

have abandoned their child that the proposed salutary rule of Comment *i* to §22 of the Proposed Official Draft, Restatement (Second) Conflict of Laws, cited approvingly by the majority, should be applicable. This would place the domicile of the children at the home of their grandmother, who has stood *in loco parentis* to them for most of their lives, and which is manifestly the place to which they are most closely related. Accordingly, I concur in the result here reached.

Mr. Justice JONES joins in this opinion.

----

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I believe that the Orphans' Court of Allegheny County had jurisdiction of this case and that its decision on the merits was correct. Thus I must register a strong dissent to the action of the majority, which has misapprehended the purpose of the jurisdictional rule of §22, comment i, of the Conflicts Restatement to work a result which without question runs contrary to the best interests of the children.

At the outset, some additional facts should be set out. After the military authorities gave custody of the children to Mrs. Fossleitner, *apparently without the consent of the father*, the father did consent to having appellee, his brother, appointed as guardian of the children. Appellee *and* the father then jointly filed a petition in the Austrian courts, requesting an order requiring Mrs. Fossleitner to deliver the children to diplomatic officials for transfer to appellee in the United States. The Austrian courts in effect held that they could take no such action *until* an American court ruled that appellee was entitled to custody. This action was then brought in Allegheny County.

The majority correctly states that jurisdiction depends on whether a "person's relationship to the state is such as to make the exercise of such jurisdiction

reasonable." Restatement (2d), Conflict of Laws §24(1) (Prop. Off. Draft 1967). Unfortunately the majority then goes on to completely ignore that principle.

The theory of jurisdiction over minor children is essentially based on the domicile of the children, which in turn is tied to the domicile of the parent. The parent's domicile in a given state is sufficient for that state to retain jurisdiction over a minor child in order to decide exactly the type of case which is now before us. Since the father's domicile is Allegheny County,[1] jurisdiction over the minor children ordinarily would attach in Allegheny County, since the Commonwealth of Pennsylvania, and more particularly the County of Allegheny, retain an interest in deciding issues concerning the family relationships of the Huck family.

The majority goes astray when it reads Restatement §22, comment i, as being applicable to this case. Comment i states that a child acquires the domicile of a grandparent or another person standing in loco parentis to the child "if both parents of a child are *dead,* or if the child is *abandoned* by both parents or by a surviving parent, *and no guardian* of the child's person is appointed. " (Emphasis supplied.) Initially it would seem sufficient to say that since the case before us is *for* the appointment of a guardian, it is rather odd to put a litigant out of court under §22, comment i, which by its terms is inapplicable when a guardian is appointed. But beyond this, §22, comment i speaks only to situations where both parents are *dead,* or where both or a surviving parent has *abandoned* the child. Neither is the case here. The father is, of course,

---

[1] Since the father did not establish a new domicile, either by his service in the military or by his institutionalization for his mental difficulties, see Restatement 2d, Conflict of Laws, §17, comment d; §23, comment d (Prop. Off. Draft 1967), his domicile remains in Allegheny County.

quite alive, and rather than abandoning the children, almost since the commencement of their stay with Mrs. Fossleitner, has been endeavoring to have them placed with appellee, his brother.

The root of the majority's confusion is in its belief that the fact that the father is incompetent[2] is the equivalent of his having abandoned the children under §22, comment i. This position is in my view untenable and ignores the rationale of the jurisdictional principle of Restatement §24(1), supra. "Abandonment" is a technical term which applies to only two situations: where the parent *deserts* the child, or where the parent gives custody of the child to a third party "with the *intention of relinquishing* his parental rights and obligations." (Emphasis added.) Restatement §22, comment e. In light of this definition, the policy of §22, comment i is clear. When the child is abandoned, or of course where both parents are dead, the state in which the parent(s) live(d) no longer has an interest in overseeing the family relationship between the parent(s) and child. That relationship in effect has been legally dissolved, either by death or by *explicit act* of the parent(s). The view of the parent(s), if living, is now that the child belongs to another, and as a result the parents' state no longer retains a sufficient interest to exercise jurisdiction over the child. If both parents are deceased, of course, the same situation prevails.

Here, however, although the father is institutionalized, he still is concerned with the welfare of the children and has done none of the acts constituting

---

[2] It is not clear to me that the father has been legally adjudicated incompetent. He, of course, presumably could be institutionalized for the treatment of a mental disease without being legally incompetent. However, even if I assume this point arguendo, I believe that the majority's disposition is in error.

an abandonment. The father did not desert the children; rather they were taken from him, and given to Mrs. Fossleitner by the military authorities, no doubt as a matter of convenience. Nor did the father relinquish the children to Mrs. Fossleitner with the intention of having her take over his parental rights and responsibilities, but instead he has actively attempted to have the children taken away from Mrs. Fossleitner. Since the interest of the father in his children is continuing, the interest of the Allegheny County court in the relationships of this family likewise is continuing, and that court, in my view, retains jurisdiction.

On the merits, there can be no doubt that the decision of the court below should be sustained. After appellant's preliminary objections were dismissed, the court below ordered appellant to answer within fifteen days. Although no answer was filed, a hearing was held as scheduled. The hearing established, in part through the testimony of an eminent Austrian lawyer, that the schools which the children would attend in Austria provided neither the facilities nor the opportunities that would be available to the children if they lived with appellee, and that college training would likely be impossible. Furthermore, Mrs. Fossleitner's home facilities were described as *barely* adequate for her, her common-law husband, and the children.

The court below also found that in Austria, the children would have a limited choice of occupations in a primarily rural area. Religious instruction for the children would be lacking, and the parish priest of the village in which the children were residing was unable to testify concerning Mrs. Fossleitner's qualifications and character because of lack of knowledge. Appellee, on the other hand, is active in civic, educational, and religious activities.

On this record, I do not believe that there can be any question that the unanimous, four judge decision of the court below awarding guardianship to appellee was a proper exercise of the court's discretion. That decision should be affirmed.